[No. D057299. Fourth Dist., Div. One. May 23, 2011.]

MARK S. REILLY, Plaintiff and Appellant, v.
GREENWALD & HOFFMAN, LLP, et al., Defendants and Respondents.

894

## COUNSEL

John F. Bannon for Plaintiff and Appellant.

Gordon & Rees and Richard R. Spirra for Defendants and Respondents.

## OPINION

**McCONNELL, P. J.**—This is a shareholder derivative action by minority shareholder Mark S. Reilly against a corporation and its majority shareholder, Lena Brion, and as relevant here, the corporation's outside counsel, Greenwald & Hoffman, LLP, and Paul E. Greenwald (together, Greenwald). The complaint alleges causes of action against Greenwald for negligent and tortious conduct for facilitating the majority shareholder's conversion of corporate funds to her own use after she and Reilly agreed to dissolve the corporation.

Reilly appeals a judgment for Greenwald entered after the trial court sustained without leave to amend his demurrer to the amended complaint. Reilly contends the court erred by finding that under *McDermott, Will & Emery v. Superior Court* (2000) 83 Cal.App.4th 378 [99 Cal.Rptr.2d 622] (*McDermott*), the claims against Greenwald are barred because the corporation has not waived the attorney-client privilege covering communications between Brion and Greenwald that are the subject matter of the claims, and thus Greenwald cannot adequately defend himself. Reilly asserts *McDermott*

is inapplicable to a dissolved corporation, but that argument was recently rejected in *Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189 [115 Cal.Rptr.3d 274] (*Favila*), which we find persuasive. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2003 Reilly and Brion agreed to operate Brion Reilly, Inc. (BRI), to provide architectural and design services. Reilly's and Brion's interests in the corporation were 49 and 51 percent, respectively, but they agreed to equal compensation and profit sharing. Brion was the president, director and chief financial officer of BRI. Reilly was also an officer and director of BRI.

In April 2004 Reilly and Brion agreed to terminate their business relationship and dissolve BRI. In August 2009 Reilly filed an amended complaint (hereafter complaint) against BRI; Brion and an entity of hers, Brion Design, Inc. (BDI); Greenwald, who was BRI's outside counsel; a bank, an officer of the bank, and two successor banks; and a certified public accountant (CPA) firm and an individual CPA. The first cause of action, titled "Shareholder Derivative Action," names all defendants. It alleges that between June 2006 and the end of 2008, Brion excluded Reilly from BRI's premises "and converted and misappropriated to herself the monies, receivables, personal property, and work in progress of BRI"; Brion engaged in this conduct with the cooperation and assistance of defendants; and as a result of defendants' misconduct BRI has suffered damages.

The seventh through ninth causes of action are solely against Greenwald. The seventh cause of action, for constructive fraud and negligent misrepresentation, alleges Greenwald, while acting as BRI's counsel, "advised BRI that . . . Brion and BDI had no duty or obligation, in connection with the termination of the business and dissolution of BRI, to account for the monies, receivables, personal property and work in progress of BRI as of the date of the termination of the business by BRI." Further, it alleges Greenwald "counseled and advised BRI that defendants Brion and BDI were entitled to appropriate such assets of BRI to their own use without any duty . . . to distribute to plaintiff his proportionate share of such assets." The eighth cause of action, for legal malpractice, alleges Greenwald breached the standard of care owed BRI, and violated rules of professional conduct, by facilitating Brion's misconduct. The ninth cause of action, for breach of contract, alleges

Greenwald's conduct was a breach of his written agreement with BRI for legal services.

The 14th cause of action, for conspiracy, is against Brion, BDI, and Greenwald. It alleges they conspired to exclude Reilly from the business premises of BRI, and misappropriated to their own use the monies, receivables and work in progress of BRI, and as a consequence BRI was damaged.

Greenwald demurred to the complaint, arguing it is barred as to him under *McDermott, supra*, 83 Cal.App.4th 378, because BRI has not waived the attorney-client privilege covering communications between him and Brion during his representation of BRI, and thus he cannot mount any meaningful defense. Additionally, Greenwald argued the 14th cause of action is barred because plaintiff did not comply with the procedural requirements of Civil Code section 1714.10, subdivision (b).

On March 12, 2010, the court issued a tentative ruling sustaining the demurrer on the basis of the opinion in *McDermott, supra*, 83 Cal.App.4th 378. After a hearing on the same date, the court confirmed its ruling. A judgment of dismissal was entered on April 13, 2010.

## DISCUSSION

### I

### *Standard of Review*

" ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation . . . .' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) The judgment of dismissal must be affirmed if any ground for demurrer is well taken, but it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. Further, it is an abuse of discretion to sustain a demurrer without leave to amend when the plaintiff shows there is a reasonable possibility an identified defect can be cured by amendment. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) "While the decision to sustain or overrule a demurrer is a legal ruling subject to de novo review on

appeal, the granting of leave to amend involves an exercise of the trial court's discretion." (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501 [82 Cal.Rptr.2d 368].)[1]

## II

### *Applicability of Attorney-client Privilege in Shareholder Derivative Action Against Corporate Outside Counsel*

### A

■ "A shareholder has the same right as anyone else to sue the corporation or its officers to enforce the shareholder's personal claims. However, a shareholder may only bring or defend an action on behalf of the corporation in exceptional cases where the directors fail to act. In these cases, the shareholder's suit is called a 'derivative action' because the wrong to be redressed is one against the corporation, and normally the corporation would bring the suit. However, when the corporation fails or refuses to act after proper demand, the shareholder's ultimate interest in the corporation is sufficient to justify bringing a 'propulsive' action, 'designed to set in motion the judicial machinery for the redress of the wrong to the corporation.' " (9 Witkin, Summary of Cal. Law (10th ed. 2005) Corporations, § 170, p. 942.)

"A *derivative* action . . . does not transfer the cause of action from the corporation to the shareholders. Rather, the cause of action in a shareholder derivative suit belongs to and remains with the corporation. . . . Though it is named as a defendant, the corporation is 'the real plaintiff and it alone benefits from the decree; the stockholders derive no benefit therefrom except the indirect benefit resulting from a realization upon the corporations' assets.' " (*McDermott, supra,* 83 Cal.App.4th at p. 382.)[2]

■ *McDermott, supra,* 83 Cal.App.4th 378, 381, notes "a derivative lawsuit for malpractice against corporate outside counsel raises unique

---

[1] In opposing Greenwald's demurrer to the complaint, Reilly requested that the trial court take judicial notice of documents Brion signed and submitted to the State of California Secretary of State on BRI's behalf pertaining to its dissolution. Greenwald opposed the request on the ground the documents are not subject to judicial notice. The appellate record contains no ruling on the matter, but Evidence Code section 452, which allows permissive judicial notice of enumerated items, does not cover the documents. Thus, we do not consider references to the documents in Reilly's briefing. "Judicial notice may not be taken of any matter unless authorized or required by law." (Evid. Code, § 450.)

[2] Reilly has expressly conceded that the first and seventh through ninth causes of action are shareholder derivative claims. Further, the allegations of all causes of action show they are shareholder derivative claims.

attorney-client privilege issues." The purpose of the attorney-client privilege "is to promote full and open discussion between clients and their attorneys." (*McKesson HBOC, Inc. v. Superior Court* (2004) 115 Cal.App.4th 1229, 1236 [9 Cal.Rptr.3d 812].) "A client has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between the client and his or her lawyer unless the privilege is waived. . . . Once a party establishes that a privilege applies, the burden shifts to the party opposing the privilege to demonstrate that the privilege did not apply, that an exception existed, or that there was an express or implied waiver." (*Tritek Telecom, Inc. v. Superior Court* (2009) 169 Cal.App.4th 1385, 1389–1390 [87 Cal.Rptr.3d 455].)

█  In *McDermott*, the court explained that while shareholders " 'stand in the shoes' " of the corporation for most purposes, "the one notable exception is with respect to the attorney-client privilege." (*McDermott, supra*, 83 Cal.App.4th at p. 383.) "It is the corporation, and not the shareholder, who is the holder of the privilege. [Citation.] Shareholders do not enjoy access to such privileged information merely because the attorney's actions also benefit them. [Citation.] Nor do shareholders obtain the right to waive the privilege simply by virtue of filing the action on the corporation's behalf. [Citation.] [¶] This distinction makes a derivative malpractice action far different from a direct malpractice action. Generally, the filing of a legal malpractice action against one's attorney results in a waiver of the privilege, thus enabling the attorney to disclose, to the extent necessary to defend against the action, information otherwise protected by the attorney-client privilege. [Citations.] However, because a derivative action does not result in the corporation's waiver of the privilege, such a lawsuit against the corporation's outside counsel has the dangerous potential for robbing the attorney defendant of the only means he or she may have to mount any meaningful defense. It effectively places the defendant attorney in the untenable position of having to 'preserve the attorney client privilege (the client having done nothing to waive the privilege) while trying to show that his representation of the client was not negligent.' " (*McDermott, supra*, 83 Cal.App.4th at pp. 383–384.)

*McDermott* adds: "California courts have refused to carve out a share-holder exception to the attorney-client privilege, even in a derivative action. [Citations.] We simply cannot conceive how an attorney is to mount a defense in a shareholder derivative action alleging a breach of duty to the corporate client, where, by the very nature of such an action, the attorney is foreclosed, in the absence of any waiver by the corporation, from disclosing the very

---

The complaint also includes causes of action against Brion, BDI and the bank defendants for conversion; against Brion and BDI for interference with contractual relations, for an accounting, and for judicial dissolution of BRI; against the CPA firm and the individual CPA for malpractice, fraud and breach of contract; and against Brion, BDI, and the CPA defendants for conspiracy.

communications which are alleged to constitute a breach of that duty." (*McDermott, supra*, 83 Cal.App.4th at p. 385.) *McDermott* holds "the creation of any shareholder right to waive the privilege in a derivative action should be left to the California Legislature. And, in the absence of such a right, this derivative action, necessarily brought in equity, cannot go forward." (*Ibid.*)

In *McDermott*, the court declined to apply the case-by-case approach some federal courts have adopted, which allows a shareholder access to privileged information in a shareholder derivative action on a "finding of good cause, including a likelihood that the corporate decision would be outside the protections of the business judgment rule." (*McDermott, supra*, 83 Cal.App.4th at p. 385.) The court explained, "[L]ong-standing California case authority has rejected this application of the federal doctrine, noting it contravenes the strict principles set forth in the Evidence Code of California which precludes any judicially created exceptions to the attorney-client privilege." (*Ibid.*)

## B

In his opening brief, Reilly contends *McDermott* is inapplicable because a *dissolved* corporation such as BRI may not assert the attorney-client privilege. Shortly before he filed the brief, however, the *McDermott* court issued *Favila, supra*, 188 Cal.App.4th 189, which rejects the same argument. *Favila* explains: "[A] dissolved corporation continues to exist for various purposes. Because it continues in existence . . . it would appear the persons authorized to act on the dissolved corporation's behalf during the windup process—its ongoing management personnel—should be able to assert the privilege, at least until all matters involving the company have been fully resolved and no further proceedings are contemplated. [Citation.] Indeed, if the lawyer-client privilege is simply extinguished upon dissolution, then the corporation's ability to effectively prosecute or defend actions is eviscerated; and the shareholders who may be responsible for their pro rata portions of any claims are unfairly disadvantaged." (*Id.* at pp. 219–220.)

We agree with *Favila*'s analysis. Corporations Code section 2010, subdivision (a) provides: "A corporation which is dissolved nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it and enabling it to collect and discharge obligations, dispose of and convey its property and collect and divide its assets, but not for the purpose of continuing business except so far as necessary for the winding up thereof." "[C]ourts have repeatedly construed [Corporations Code] section 2010 [and] its predecessors . . . as permitting parties to bring suit against dissolved corporations." (*Peñasquitos, Inc. v.*

*Superior Court* (1991) 53 Cal.3d 1180, 1186 [283 Cal.Rptr. 135, 812 P.2d 154].) "Under our statutory scheme, the effect of dissolution is not so much a change in the corporation's status as a change in its permitted scope of activity. . . . Thus, a corporation's dissolution is best understood not as its death, but merely as its retirement from active business." (*Id.* at p. 1190.)

■ Indeed, Reilly is able to bring this action because BRI's existence continues for purposes of litigation. It is only logical that if a dissolved corporation continues to exist for litigation, it remains the holder of the attorney-client privilege during the litigation. A dissolved corporation would be at just as great a disadvantage as an active corporation by having to disclose confidential communications with its outside counsel. Moreover, the status of a corporation does not affect corporate counsel's inability to adequately defend himself or herself against malpractice and related claims in a shareholder derivative suit absent the corporation's waiver of the privilege.

■ In his reply brief, Reilly asserts that notwithstanding *Favila*, BRI cannot assert the attorney-client privilege because there is "no functioning management of the corporation" to assert the privilege on its behalf. The complaint, however, does not allege BRI lacks current management, and Reilly does not seek leave to amend. To the contrary, the complaint effectively concedes Brion is managing BRI postdissolution. For instance, the complaint alleges "Brion is now . . . the owner of fifty-one . . . shares of stock of BRI and an officer and a director of BRI." Further, it alleges Reilly "did not make any effort to secure action from the Board of Directors of BRI in pursuing this action since any such effort would have been futile for the reasons that . . . Brion, on June 15, 2006 and continuing thereafter, was the President, Chief Financial Officer and owner of fifty-one . . . of the shares of BRI, representing fifty-one percent . . . of the voting power of BRI, and would have obviously refused to comply with any request or demand for such action." The complaint also alleges that as president, chief financial officer and majority shareholder of BRI, Brion has a *current* duty to "account to BRI for all of the assets of BRI . . . as of June 15, 2006." "The board of directors and officers of the dissolved corporation have the authority to act on the corporation's behalf to wind up its affairs." (*Favila, supra,* 188 Cal.App.4th at p. 213; see Corp. Code, § 2001, subds. (b), (d).)

■ Even if Brion were not following procedures set forth in the Corporations Code during the windup period, as Reilly suggests,[3] absent a waiver of

---

[3] Reilly cites Corporations Code section 307, subdivision (a)(7), which provides: "A majority of the authorized number of directors constitutes a quorum of the board for the transaction of business. The articles or bylaws may not provide that a quorum shall be less than one-third [of] the authorized number of directors or less than two, whichever is larger, unless the authorized number of directors is one, in which case one director constitutes a

the attorney-client privilege by *someone* authorized to make it on BRI's behalf, *Greenwald* is duty bound to claim the privilege. " 'An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment . . . .' " (*Stearns v. Los Angeles City School Dist.* (1966) 244 Cal.App.2d 696, 723 [53 Cal.Rptr. 482].) Evidence Code section 955 provides, "The lawyer who received or made a communication subject to the privilege under this article shall claim the privilege whenever he is present when the communication is sought to be disclosed and is authorized to claim the privilege under subdivision (c) of Section 954." (See also Bus. & Prof. Code, § 6068, subd. (e)(1) [attorney must "maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client"].) The complaint does not allege BRI's waiver of the attorney-client privilege, and Reilly does not seek leave to amend. Absent waiver, Greenwald cannot adequately defend himself against claims he facilitated Brion's wrongdoing.

Reilly's reliance on Evidence Code section 953, subdivision (d) for the proposition that only the successor to a dissolved corporation holds the attorney-client privilege is misplaced. The statute provides that the holder of the attorney-client privilege is a "successor, assign, trustee in dissolution, or any similar representative of a . . . corporation . . . *that is no longer in existence.*" (Evid. Code, § 953, subd. (d), italics added.) BRI remains in existence to wind up its affairs, including to litigate the instant action. Under subdivision (a) of section 953, the client is the holder of the privilege.

▇▇▇ Reilly also cites Evidence Code section 958, which states, "There is no privilege under this article as to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship." The statute does not apply, however, to a derivative malpractice action. (*McDermott, supra*, 83 Cal.App.4th at pp. 383–384.)

Additionally, *City of Rialto v. U.S. Department of Defense* (C.D.Cal. 2007) 492 F.Supp.2d 1193 (*Rialto*) is inapt. *Rialto* was not a shareholder derivative action against corporate outside counsel. *Rialto* was a discovery dispute in which the court concluded a corporation (Kwikset) that dissolved and transferred its assets to a successor company about 50 years earlier did not retain the attorney-client privilege. Rather, the privilege transferred to the successor company, and then again to that company's successor. Under those facts, the court upheld a special master's finding that "Kwikset, as a dissolved corporation, cannot assert the attorney-client privilege in this litigation." (*Id.* at

quorum." The complaint's 15th cause of action against BRI and Brion, for judicial dissolution, alleges "BRI was falsely and purportedly dissolved by . . . Brion on or about November 10, 2008 without the knowledge or consent of plaintiff, and without providing an accounting and distribution to the shareholders of BRI of their proportionate share of the assets of BRI."

p. 1202.) The court concluded the ultimate successor waived the right to assert the privilege by not timely objecting to discovery requests. (*Id.* at pp. 1201–1202.) Here, BRI has no successor to whom the privilege was transferred, and it is still in the windup period. Further, *Rialto* acknowledges that when it was decided, there was no California law determining whether a corporation loses the attorney-client privilege on dissolution. (*Id.* at p. 1199.) Now we have the opinion in *Favila, supra*, 188 Cal.App.4th 189.

## C

### 1

Reilly contends the privilege issue here should not be decided at the pleading stage. He cites this court's opinion in *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771 [99 Cal.Rptr.3d 464] (*Dietz*). In *Dietz*, we concluded there are several factors a court must consider, under *General Dynamics Corp. v. Superior Court* (1994) 7 Cal.4th 1164 [32 Cal.Rptr.2d 1, 876 P.2d 487] (*General Dynamics*) and its progeny, before it "may dismiss a case on the ground that a defendant attorney's due process right to present a defense would be violated by the defendant's inability to disclose a client's confidential information if the action were allowed to proceed." (*Dietz*, at p. 792.) To dismiss a case at the pleading stage, a court must determine whether (1) the evidence at issue is the client's confidential information, and the client insists that it remain confidential; (2) given the nature of plaintiff's claim the confidential information is highly material to the defendant's defenses; (3) there are "ad hoc" measures available to avoid dismissal such as " 'sealing and protective orders, limited admissibility of evidence, orders restricting the use of testimony in successive proceedings, and, where appropriate, in camera proceedings' "; and (4) it would be fundamentally unfair to proceed. (*Dietz*, at pp. 792–793.)

In *Dietz*, we acknowledged that the *McDermott* court "relied heavily on the fact that the confidential information at issue [there] was highly material to the defendants' defenses. In *McDermott*, the court held that dismissal was proper in a case in which the plaintiff brought a claim that, by its very nature, necessitated that the defendant disclose privileged or confidential information in order to present 'a[] meaningful defense.' " (*Dietz, supra*, 177 Cal.App.4th at pp. 792–793, citing *McDermott, supra*, 83 Cal.App.4th at p. 381.) Here, the situation is the same. The complaint alleges Greenwald's negligence and tortious conduct facilitated Brion's conversion of BRI's assets to her own use. Obviously, his confidential communications with her are highly material to his defenses. Further, the complaint does not allege any waiver by BRI, and thus the client insists on confidentiality. Under the circumstances, it would be fundamentally unfair to proceed against Greenwald.

2

As to the propriety of dismissal at this stage, we also acknowledge the approach the court adopted in *Favila, supra*, 188 Cal.App.4th 189. In *Favila*, the court reversed a judgment of dismissal entered after the sustaining of corporate outside counsels' demurrer to a shareholder derivative action. The court remanded the matter to the trial court for its further consideration of whether under *McDermott* the attorneys' inability to disclose privileged information barred the action. The court concluded the propriety of the trial court's ruling "depends on the resolution of several difficult questions involving the lawyer-client privilege in the context of an asset sale followed immediately by a corporate dissolution." (*Favila, supra*, 188 Cal.App.4th at p. 218.)

The court explained "a demurrer based on *McDermott* . . . is unlike most pleading motions; for it asks the trial court to speculate about matters in the future (can the lawyer-defendant adequately defend the case if privileged information cannot be disclosed), rather than to evaluate the legal sufficiency of the complaint actually before it. Accordingly, if a demurrer to a derivative complaint against outside counsel would otherwise be overruled but for the *McDermott* . . . issue and there appears to be a realistic possibility that litigation of the remainder of the action against corporate insiders will result in a waiver of the corporation's privilege or produce additional evidence supporting an exception to that privilege, the trial court should not sustain the demurrer and dismiss the action. Rather, under these circumstances, the appropriate action is for the court to conditionally stay further proceedings against outside counsel, including discovery as to the causes of action against them, and defer consideration of any demurrer or judgment on the pleadings based on counsel's inability to defend because of the lawyer-client privilege." (*Favila, supra*, 188 Cal.App.4th at p. 221, fn. omitted.)

Greenwald criticizes the conditional stay approach as requiring factual findings on demurrer, implementing a vague procedure without legislative approval or sufficient guidelines, and prejudicing corporate outside counsel in the event of the lifting of a stay after discovery and trial against other defendants proceeded, and by counsels' inability to represent the corporation without a prompt ruling on the demurrer. In his reply brief, Reilly addresses *Favila*, but he does not assert there is any realistic possibility BRI will waive the privilege or that any evidence may develop to show an exception to the privilege, or that the ruling on the demurrer should be conditionally stayed under *Favila*. Accordingly, Reilly has forfeited review of the issue and we need not decide if we agree with *Favila*'s conditional stay approach.

## DISPOSITION

The judgment is affirmed. Greenwald is entitled to costs on appeal.

Nares, J., and O'Rourke, J., concurred.