Filed 4/30/13

*CERTIFIED FOR PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARY MELENDREZ et al., | B243320 |
| Petitioners, | (Los Angeles County Super. Ct. No. JCCP4674) |
| v. | |
| SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES, | |
| Respondent; | |
| SPECIAL ELECTRIC COMPANY, INC., | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate.  Emilie H. Elias, Judge.  Petition granted and remanded for further proceedings.

Simon Greenstone Panatier Bartlett, Brian P. Barrow and Nectaria Belantis for Petitioners, Mary Melendrez et al.

No appearance for Respondent.

Brydon Hugo & Parker, Edward R. Hugo, Jeffrey Kaufman and Amber Lee Kelly for Real Party in Interest, Special Electric Company, Inc.

A bankrupt corporation which purportedly only existed as a shell through which personal injury claims were passed on to its insurer for resolution was sued for personal injury. Pursuant to its reorganization plan, the action was submitted to its insurers, who provided a defense. When discovery was propounded to the corporation, the corporation's attorney (who had been provided by the insurers) filed substantive responses to the discovery, but represented to the court that the responses could not be verified, as the corporation had no officer, director, employee, or agent who could verify the discovery responses. The personal injury plaintiff challenged the sufficiency of the discovery responses. The trial court agreed that, under the circumstances, no individual existed who could verify the responses, and, at the corporation's request, simply deemed them verified. The plaintiff filed the instant writ petition, challenging the trial court's order.

As we shall discuss, the law provides that an attorney can verify responses on behalf of a corporation, although such an act constitutes a limited waiver of the attorney-client and work product privileges with respect to the identity of the sources of the information contained in the response. In this case, the attorney argued that she could not verify the discovery responses because the corporation was the holder of the attorney-client privilege, but had no officer or director who could waive it. We conclude that the court could have directed that further effort be made to have a director elected or appointed on behalf of the corporation. It may, however, be that the corporation no longer exists and no director can be elected or appointed. If that is the case, we believe that the corporation's attorney-client privilege would be passed to its

2

insurers, the de facto assignee of its policies and the claims against them. We will therefore grant plaintiff's petition for a writ of mandate and remand for further proceedings on the issue.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs and Petitioners Mary Melendrez, individually and as personal representative of the Estate of Lario David Melendrez; Mario Melendrez; Phillip Melendrez; David Melendrez; and Veronica Pueyo (collectively, Melendrez) brought the instant wrongful death action against numerous entities, including respondent Special Electric Company, Inc. (SECO), alleging that the decedent died of mesothelioma as the result of exposure to asbestos.[1] SECO was alleged to be liable as a manufacturer and supplier of crocidolite mats, and as a supplier of raw crocidolite asbestos.

In 2004, years prior to the action being filed, SECO filed a Chapter 11 bankruptcy petition. As described by one of SECO's attorneys, Attorney Amber Lee Kelly, "[i]n 2006, the U.S. Bankruptcy Court approved [SECO]'s Second Amended Plan of Reorganization, which reduced [SECO] to a shell for the *sole* purpose of processing asbestos lawsuits." (Italics added.) Pursuant to the reorganization plan, a registered agent was appointed for the service of asbestos claims, who was required to forward those claims to SECO's insurers. The insurers, in turn, were required to defend and/or settle the claims "in accordance with and in a manner consistent with the

---

[1]  The action was initially commenced as a personal injury action. Decedent died on July 18, 2011. It is unclear exactly when the initial complaint was filed; SECO answered it in April 2011.

3

language of the applicable [i]nsurance [p]olicies and applicable state law."[2]  As we shall discuss, this was not the sole term of the reorganization plan.  It also provided that an unsecured creditors trust would be created to hold and liquidate SECO's assets, apart from, inter alia, its insurance policies.  It further provided that the existing owners of outstanding common stock in SECO retained those interests and that, if any assets remained after termination of the unsecured creditors trust, those assets would be deemed transferred to the holders of those interests.  One John Erato, who was, in some way, affiliated with SECO, served as SECO's director and president post-bankruptcy.

In any event, Melendrez's complaint was defended on behalf of SECO by its insurers, as provided in the reorganization plan.  Counsel was retained by the insurers to represent SECO for the purpose of providing such defense.

On December 22, 2011, Melendrez served SECO's counsel with requests for admission (RFAs) pursuant to the provisions in Code of Civil Procedure, section 2033.010, et seq.[3]  The RFAs sought admission of many facts the admission of which would result in a judgment in Melendrez's favor.[4]  Counsel for SECO prepared a response which contained objections, denials, and statements of inability to admit or

---

**2**    Under the plan, all claims against SECO were stayed, except for these asbestos claims.

**3**    Unless otherwise stated, all statutory references are to the Code of Civil Procedure.

**4**    For example, it sought admission of the facts that the decedent suffered from mesothelioma, which was caused by asbestos exposure, and that his "breathing of asbestos from asbestos supplied by [SECO] was a substantial factor in causing his mesothelioma."

4

deny after reasonable investigation.  The response was signed by counsel, but unverified.

As caselaw provides that an unverified response is tantamount to no response at all (*Allen-Pacific, Ltd. v. Superior Court* (1997) 57 Cal.App.4th 1546; *Appleton v. Superior Court* (1988) 206 Cal.App.3d 632, 636), Melendrez moved under section 2033.280, subdivision (b) for an order deeming the matters specified in the RFAs admitted.

SECO opposed the motion on the basis that it was impossible for SECO to verify the response, due to its lack of officers, directors, employees, and agents. Section 2033.240, subdivision (b) provides that, if the party responding to RFAs is a corporation, "one of its officers or agents shall sign the response under oath on behalf of that party."  SECO submitted a declaration of Attorney Kelly explaining SECO's history, its bankruptcy, and its lack of directors, officers or employees.  Attorney Kelly declared that John Erato, who had served as director and president of SECO post-bankruptcy, had resigned, effective November 24, 2009, leaving SECO with no officers, directors, employees, or agents.[5]

In SECO's opposition to the motion to deem the RFAs admitted, SECO acknowledged that section 2033.240, subdivision (b) provides that the agent signing on

---

[5]    Attorney Kelly also declared that a former SECO salesman subsequently volunteered to serve as SECO's person most knowledgeable, but he died in November 2010.  According to Attorney Kelly, "[a]ll other former employees are no longer alive, cannot be found, or are unwilling to serve as" the person most knowledgeable.  We note that whether SECO had a "person most knowledgeable" was not at issue; instead, the issue was whether SECO had an "officer or agent," who could verify the RFA responses.  (§ 2033.240, subd. (b).)

behalf of a corporation can be "an attorney acting in that capacity for the party." However, when an attorney verifies the response, the party "waives any lawyer-client privilege and any protection for work product . . . during any subsequent discovery from that attorney *concerning the identity of the sources of the information contained in the response*." (Italics added.) SECO argued that it could not be compelled by the court to waive the attorney-client privilege, and noted that it had no officer or director who could "waive the attorney-client privilege and authorize defense counsel to sign verifications."

SECO acknowledged that there were two purposes to a verification: first, to made the discovery responses admissible; second, to provide a witness who could testify concerning the sources for the discovery responses. As to the first purpose, SECO offered to stipulate that its responses would be admissible against it at trial. As to the second purpose, SECO argued that, since it had no employees or agents who could be deposed, nothing could be gained by a verification.

At the hearing on the motion, the issue arose as to the basis on which SECO denied several of the RFAs. SECO's counsel explained that, in the past, when SECO had employees, information was gathered through depositions and attorney-client communications. Counsel based SECO's denials on the information already in its possession. Counsel represented that it could provide this information in response to other discovery requests. The court suggested that Melendrez proceed by means of form interrogatory 17.1. Concluding that no one could verify the RFA response, the

6

court denied the motion to deem the RFAs admitted, and instead deemed the response verified by SECO.[6]

Five days later, Melendrez served SECO with form interrogatory 17.1, which asks, with respect to each RFA not unqualifiedly admitted, for: the facts upon which the response is based; the names and contact information of all persons with knowledge of those facts; the identity of all documents and tangible things that support the response; and the contact information of the persons in possession of the documents and things.

As they had promised, SECO's attorneys provided a substantive response to the interrogatory.[7] Counsel identified: specific facts which supported SECO's denials of the RFAs; many individuals who have (or had, in the case of deceased individuals) knowledge of the facts; cases in which those individuals gave relevant deposition testimony; and several other documents which also supported their denials. The interrogatory response was, as with the RFA response, signed by counsel, but not verified.

Melendrez moved for an order compelling SECO to provide a verified response. In the alternative, Melendrez sought an order authorizing it to depose SECO's attorney who had signed the response.

---

[6] This would subject SECO to the reasonable costs of proof Melendrez might incur in proving matters which SECO had no reasonable ground for failing to admit. (§ 2033.420.)

[7] Nonetheless, SECO also objected to the interrogatory "to the extent it seeks information protected by the work-product doctrine or other applicable protections from discovery."

SECO opposed the motion, arguing, as it had before, that it had no officer or agent to verify the response.[8]  As before, SECO acknowledged that the law provides that an attorney may verify the response, but to do so works a limited waiver of the attorney-client privilege.  (§ 2030.050, subd. (b).)  SECO again argued that it had no officer or director who could "waive the attorney-client privilege and authorize defense counsel to sign verifications."  SECO again offered to stipulate that the responses would be admissible against it.

After a hearing, the court denied the motion and deemed the responses verified.  At the hearing, there was some dispute regarding whether Melendrez's counsel had possession of the deposition transcripts referenced in the interrogatory response.[9]  The court ordered the transcripts, and other documents in SECO's counsel's possession, to be provided to Melendrez's counsel.  At the close of the hearing, the trial court stated to Melendrez's counsel:  "You will get those documents, and if you find out there's something different, I will be sitting here ready to do whatever needs to be done."  Melendrez's counsel responded, "And I very much appreciate that, but I will never know if I got all the documents because nobody is under oath."

Melendrez filed a petition for writ of mandate, challenging the trial court's rulings deeming verified the responses to the RFAs and the form interrogatory.  We

---

[8]  As with the response to RFAs, the response to interrogatories is to be signed under oath.  (§ 2030.050, subd. (a).)

[9]  SECO's counsel indicated that Melendrez's prior counsel had represented that he already possessed the documents.  Melendrez's current counsel claimed that he had none of them.

8

issued an order to show cause. While the matter was pending, SECO sought judicial notice of an official document indicating that SECO was "administratively or involuntarily dissolved, effective September 11, 2012." We have granted that motion for judicial notice.

## ISSUE PRESENTED

While the parties did not initially focus on the issue, it appears that SECO's attorney is both: (a) an agent of SECO; and (b) the individual with the knowledge necessary to verify SECO's responses. SECO's counsel argues that it cannot verify the responses because an attorney verification effects a limited waiver of the attorney-client privilege, and that SECO's counsel must assert the privilege on behalf of its client. SECO's counsel further argues that SECO has no officer or director who could waive the attorney-client privilege and permit its attorney to verify the responses. While all of that may be true, the real issue raised by this case is: "Who can waive the privilege on behalf of a dissolved corporation with no officers, directors, or employees?" It may be that, although SECO had no officers or directors, a means may have existed by which a director could have been elected or appointed. If that is not the case, we believe that the privilege, in the somewhat unique circumstances of this case, would have passed to SECO's insurers.

## DISCUSSION

We first discuss the verification requirement and the limited waiver of the privileges set forth in the governing statutory provisions. Second, we turn to the issue

of the applicable privileges and their holders.  Finally, we apply that law to the facts of this case.

  1.     *The Verification Requirement and the Limited Waiver*

We are concerned with both RFAs and interrogatories.  As noted above, responses to both types of discovery, other than those containing only objections, must be signed by the responding party under oath.  (§§ 2030.250, subd. (a); § 2033.240, subd. (a).)  The applicable statutes provide, identically, "If that party is a public or private corporation, or a partnership, association, or governmental agency, one of its officers or agents shall sign the response under oath on behalf of that party." (§§ 2030.250, subd. (b); 2033.260, subd. (b).)

An attorney cannot verify a response on behalf of an individual party.  (*Brigante v. Huang* (1993) 20 Cal.App.4th 1569, 1575.)  However, an attorney may verify a response as officer or agent of a corporate party.  (§§ 2030.250, subd. (b); 2033.260, subd. (b).)  Doing so, however, will constitute a limited waiver of the attorney-client and work product privileges, "during any subsequent discovery from that attorney concerning the identity of the sources of the information contained in the response." (§§ 2030.250, subd. (b); 2033.260, subd. (b).)

The reason for this waiver should be obvious.  As a general matter, when an individual verifies discovery responses, further discovery can be directed to that individual to determine the sources for the initial responses.  Indeed, SECO conceded this is one of the purposes of a verification of a discovery response,  and Melendrez pursued this course by following the RFAs with form interrogatory 17.1.  But if an

10

attorney verifies the initial discovery response without a corresponding limited waiver of the privileges, the attorney can frustrate follow-up discovery by simply asserting those privileges.[10]  Indeed, when the limited privilege waiver was enacted as part of the Civil Discovery Act of 1986, the Reporter's Note to the State Bar-Judicial Council Joint Commission on Discovery explained, "Frequently, the one signing on behalf of an organization is either the attorney of the party in the action or someone on the organization's legal staff.  This practice invites assertion of the lawyer-client privilege and the work product protection when the party who requested the admissions tries to learn the sources of any information in the response.  The Commission concluded that it should be made clear that neither this privilege nor the work product protection may be claimed when that party tries to explore the sources of the information used by the attorney in preparing the response."[11]  (State Bar-Judicial Council Joint Commission on Discovery, Proposed Civil Discovery Act of 1986, pp. 102-103.)

---

[10]     For example, an attorney could deny all RFAs, but when asked for the facts on which those denials were based (with form interrogatory 17.1), the attorney could respond that the information is privileged under the attorney-client or work product privileges.  Indeed, in this case, although SECO provided a lengthy substantive response to form interrogatory 17.1, it asserted the work product privilege, suggesting that its response might not have been complete.

[11]     The California Supreme Court would subsequently conclude that the identity of witnesses from whom counsel has obtained statements "is not automatically entitled as a matter of law to absolute or qualified work product protection.  In order to invoke the privilege, [the party] must persuade the trial court that disclosure would reveal the attorney's tactics, impressions, or evaluation of the case (absolute privilege) or would result in opposing counsel taking undue advantage of the attorney's industry or efforts (qualified privilege)."  (*Coito v. Superior Court* (2012) 54 Cal.4th 480, 486.)

11

We note that, in its briefs in the instant writ proceeding, SECO argues that "waiver of privilege is a slippery slope. Once there is a waiver, it is difficult to confine it. Requiring attorneys for SECO to verify the discovery responses has every potential to infringe on protected communications in this case, and all future cases." We respectfully disagree. The applicable statutes narrowly circumscribe the waiver; the privileges are only waived during any subsequent discovery from the attorney *concerning the identity of the sources of the information contained in the response*. The statutes do not provide for or permit lengthy further discovery from a verifying attorney. Indeed, there is no indication that a deposition of the verifying attorney would ever be necessary in any particular case.[12] Nor is there any reason to believe that a trial court would not promptly and properly limit any such further discovery directed to the verifying attorney.

---

[12] "Depositions of opposing counsel are presumptively improper, severely restricted, and require 'extremely' good cause—a high standard. [Citations.]" (*Carehouse Convalescent Hospital v. Superior Court* (2006) 143 Cal.App.4th 1558, 1562.) "California applies a three-prong test in considering the propriety of attorney depositions. First, does the proponent have other practicable means to obtain the information? Second, is the information crucial to the preparation of the case? Third, is the information subject to a privilege? [Citations.]" (*Id*. at p. 1563.) If an attorney verifies discovery responses on the part of a corporate client, the third prong is resolved by the statute – the attorney-client and work product privileges are waived on the issue of the sources of the information contained in the attorney's verified discovery response. However, any party seeking to depose the verifying attorney would still have the burden to establish the first two prongs in order to obtain the deposition. In the usual case, the first prong cannot be established because the information would be available by means of further written discovery. The instant case is a perfect example of this. Had counsel verified the RFA response, the privileges would have been waived with respect to the identity of the sources of the information contained in the RFA response – the precise information sought by form interrogatory 17.1.

2. *The Holder of the Privileges*

At issue in this case are the work product and attorney-client privileges. Any concerns regarding the ability to waive the work product privilege are easily addressed. The attorney, not the client, is the exclusive holder of the work product privilege. (*State Comp. Ins. Fund v. Superior Court* (2001) 91 Cal.App.4th 1080, 1091.) Thus, the attorney can waive the work product privilege without the consent of the client.

The attorney-client privilege, however, is held by the client. (Evid. Code, § 953, subd. (a).) An attorney who received or made a privileged communication is *required* to claim the privilege whenever the communication is sought to be disclosed and the attorney is authorized to claim the privilege. (Evid. Code, § 955.) The attorney, in turn, is authorized to claim the privilege unless there is no holder of the privilege or the attorney is instructed by the holder to permit disclosure. (Evid. Code, § 954, subd. (c).)

While it is true that the privilege is generally held by the client, this is not always the case. Consider the case of an individual client who is deceased. Initially, if the client is dead, the personal representative of the client becomes the holder of the privilege. (Evid. Code, § 953, subd. (c).) However, once the client's estate is distributed and the personal representative is discharged, the privilege is terminated. (*HLC Properties, Ltd. v. Superior Court* (2005) 35 Cal.4th 54, 65, 67.)

We are concerned in this matter with a *corporate* client. As a general matter, the power to assert and waive the attorney-client privilege held by a corporation belongs to corporate management and is normally exercised by the corporation's officers and directors. (*Venture Law Group v. Superior Court* (2004) 118 Cal.App.4th 96, 105.) In

13

considering the holder of the privilege of a corporation no longer in operation, it is important to recognize the distinction between a *dissolved* corporation, and one *no longer in existence*. If the corporation is dissolved, it continues to exist for the limited purposes of winding up. (*Reilly v. Greenwald & Hoffman, LLP* (2011) 196 Cal.App.4th 891, 901 (*Reilly*).) "Because it continues in existence, not unlike the personal representative of an individual client who has died [citation], it would appear the persons authorized to act on the dissolved corporation's behalf during the windup process—its ongoing management personnel—should be able to assert the privilege, at least until all matters involving the company have been fully resolved and no further proceedings are contemplated." (*Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 219 (*Favila*); see also *Reilly, supra,* 196 Cal.App.4th at p. 902.) However, if the corporation "is no longer in existence," the privilege is held by a "successor, assign, trustee in dissolution,[13] or any similar representative" of the corporate entity no longer in existence.[14] (Evid. Code, § 953, subd. (d).)

3.    *Application to the Facts in this Case*

In this case, SECO argues that it could not provide verified discovery responses as there is no living officer, director, manager or agent available who could verify them.

---

[13]    That a "trustee in dissolution" can exist for a corporate entity no longer in existence confirms that a dissolved corporation may become an entity no longer in existence when it has no corporate management.

[14]    If there is no such successor entity, and the corporation no longer exists, we presume the privilege would no longer exist, as with a deceased individual client whose estate has been distributed and the personal representative discharged. We need not, however, reach that issue in this case.

14

This is untrue. In its briefs in the instant writ proceedings, SECO concedes that attorneys are agents of their clients and that its attorneys are "the only people with any knowledge about this matter." It is clear, then, that SECO's attorneys are agents who could verify its discovery responses.

SECO argues, however, that its attorneys are prohibited from verifying its discovery responses, because such a verification would constitute a limited waiver of the attorney-client privilege. SECO argues that, in the absence of an officer or director of SECO, there is no individual who can waive the privilege on behalf of SECO, and that its attorneys are therefore obligated to assert the privilege.

We agree with SECO that its attorneys cannot waive the privilege on its behalf. We disagree, however, with the suggestion that, as SECO has no officers or directors, it could never waive the privilege.

At the time of the discovery responses, SECO was operating pursuant to the reorganization plan approved by the bankruptcy court. Although John Erato had been named director and president of SECO while it was in bankruptcy, he had since resigned. The problem faced by SECO's counsel was that no further officers or directors existed. However, a means may have existed for the election or appointment of a new director. According to the reorganization plan, SECO's shareholders, or their successors and assigns, still retained their interests in SECO. SECO was a Wisconsin corporation; under Wisconsin law, the shareholders elect directors. (Wis. Stat. § 180.0728.) Indeed, Wisconsin law provides that the dissolution of a corporation does not change any of the provisions for selection of its directors or officers. (Wis. Stat.

15

§ 180.1405, subd. (2)(3)2.)  Thus, it is possible that the shareholders could have elected a new director.[15]  Alternatively, it may be that authority existed for someone to appoint a new director.  Erato's letter of resignation was directed to two law firms, and assumed that the law firms would "designate" an individual "to take over as director."  While the record is not sufficient for us to determine how a successor director could have been properly identified and appointed for SECO, it is clear that the corporation, while acting pursuant to its reorganization plan, was neither dissolved nor no longer in existence.  Therefore, the proper course of action would have been to attempt to obtain a director for SECO, who could determine whether to waive the privilege.[16]

SECO was administratively or involuntarily dissolved while this writ proceeding was pending.  The mere fact of dissolution alone does not change the result.  As we have discussed above, the law provides that a dissolved corporation's ongoing management personnel hold the privilege during the winding up process.

What is unclear, however, is whether SECO is, at present, no longer in existence in any real sense.  If SECO is no longer in existence, Evidence Code section 953,

---

[15]    SECO was subject to the continuing jurisdiction of the bankruptcy court.  It is not clear whether the bankruptcy court would have been required to approve the election of a new director.  As part of the court's initial approval of the reorganization plan, SECO was required to indentify all individuals proposed to serve as directors (11 U.S.C. § 1129(a)(5)(A)(i)) and the court was required to find that the service of those individuals as directors was "consistent with the interests of creditors and equity security holders and with public policy."  (11 U.S.C. § 1129(a)(5)(A)(ii).)

[16]    We are not unsympathetic to the predicament of counsel for SECO, who found themselves with a client who had no one to speak for it.  However, counsel could not simply rely on SECO's lack of directors to assert that SECO could never waive the privilege; instead, efforts should have been made to obtain a director.

16

subdivision (d) governs, and provides that the privilege would be held by SECO's "successor, assign, trustee in dissolution, or any similar representative." Assuming that SECO's unsecured creditors trust has been dissolved and the assets therein disposed, SECO's only remaining asset would be its insurance policies. While SECO exists in name only – to pass the claims on to the insurance companies for resolution of the claims pursuant to the policies – the practical effect of this arrangement is that SECO's insurance policy assets have been assigned to the insurance companies, as have been the claims against those assets. As SECO's de facto assignee, the insurers would hold SECO's attorney-client privilege, and have the authority to waive it, with respect to the asbestos actions against SECO's policies.[17]

SECO rejects this result, arguing instead that the privilege is held by SECO while it is still defending this action, but that no individual exists who can waive the privilege. SECO relies on the authority holding that a dissolved corporation continues to exist for the purpose of winding up and, therefore, continues to hold the privilege during that time. (*Reilly, supra,* 196 Cal.App.4th at pp. 901-902; *Favila, supra,* 188 Cal.App.4th at p. 219.) These cases, however, are distinguishable. In *Reilly* and *Favila*, it was held

---

[17]     In *Venture Law Group v. Superior Court, supra,* 118 Cal.App.4th at p. 104, the plaintiffs argued that the privilege passed from a corporation to its directors and officers liability insurer, on the basis that the insurer was directing the defense of the action. The court rejected the argument because, in that case, the corporation had merged into a second corporation. The second corporation, into which the first corporation had merged, was the successor to the first corporation and, therefore, held the privilege pursuant to Evidence Code section 953, subdivision (d). (*Id*. at p. 106.) *Venture Law Group* is thus clearly distinguishable from the instant case. We are not dealing with a merged corporation, but one which has no existence except to enable claims to be brought against its insurance policies.

that the privilege could be asserted by "the persons authorized to act on the dissolved corporation's behalf during the windup process," which, in those cases, was each corporation's ongoing management personnel. (*Reilly, supra,* 196 Cal.App.4th at p. 901; *Favila, supra,* 188 Cal.App.4th at p. 219.) Here, however, there is no ongoing management at SECO. Beyond forwarding asbestos claims to SECO's insurers, there is no further winding up activity at SECO. Based on counsel's declaration, SECO's only existence is as an empty shell to process asbestos actions. Therefore, the only persons authorized to act on SECO's behalf during the winding up process are its insurers. The reasoning of *Reilly* and *Favila*, therefore, supports the conclusion that the insurers are the holders of SECO's attorney-client privilege.[18]

Melendrez also disagrees with our result, arguing that, as there is no individual to hold the privilege on behalf of SECO, the privilege simply evaporates. Again, we disagree. It is apparent that the insurers are acting for SECO with respect to the asbestos claims during its winding up process; in the absence of anyone else to assert the privilege on behalf of the corporation, the insurers should therefore succeed to

---

[18] We note again that Evidence Code section 953, subd. (d) provides that the privilege of a corporation no longer in existence can pass to its "trustee in dissolution." In such a circumstance, the trustee is acting on the corporation's behalf during the dissolution process; therefore, it makes sense that the trustee is the individual to whom the privilege passes. In this case, it is the insurers who are the only entities acting on SECO's behalf; it makes sense for the privilege to pass to them. To the extent SECO argues that any transfer of the privilege must be legislatively-mandated, we find such a mandate in Evidence Code section 953, subdivision (d), which provides that the privilege of a corporation no longer in existence passes to its "successor, assign, trustee in dissolution, or any similar representative." This language is broad enough to encompass an insurer when the insurer's policy is the corporation's only remaining asset and the insurer is defending a claim asserted against the corporation that is covered under that policy.

SECO's interest as holder of the privilege. Additionally, Melendrez suggests that, if the insurers hold the privilege, the insurers would be placed in a conflict of interest, in that they may choose "to suppress information not for [SECO's] benefit, but for their own." This is not a realistic concern. Regardless of whether the insurers hold SECO's attorney-client privilege for the purpose of the asbestos actions, the insurers nonetheless owe SECO, their insured, a duty of good faith. (*State Farm Fire & Casualty Co. v. Superior Court* (1989) 216 Cal.App.3d 1222, 1226.) We see no reason to assume the insurers would violate this duty if given the authority to waive or assert SECO's attorney-client privilege in the context of this litigation.

We therefore conclude that, if SECO is not in existence for the purposes of Evidence Code section 953, subdivision (d), its attorney-client privilege transfers to its insurers, to the extent of the resolution of the asbestos claims against SECO which have been submitted to the insurers. As it is not clear from the record before us whether SECO is still in existence, we cannot determine if: (1) a director could be elected or appointed to SECO; or (2) its insurers now hold SECO's attorney-client privilege. It is clear, however, that *someone* can be found to hold SECO's attorney-client privilege and decide whether to waive it to the limited extent necessary for SECO's attorneys to verify its discovery responses. As such, we will remand for further proceedings on Melendrez's motions. The trial court should first determine whether SECO is still in existence beyond being a shell for the transmission of insurance claims to its insurers. If so, the court should direct SECO's counsel to seek the election or appointment of a new director for SECO, who would hold SECO's attorney-client privilege. If not,

19

SECO's insurers hold its attorney-client privilege. Once the privilege holder is identified, that individual or entity should be given an opportunity to decide whether to waive the privilege for the limited extent necessary for SECO's counsel to verify its discovery responses. If SECO chooses not to waive the privilege, the unverified discovery responses cannot be deemed verified, and the court should proceed to rule on Melendrez's motions as it would on any discovery motions when the responses are unverified.

### DISPOSITION

The petition for writ of mandate is granted. Let a writ of mandate issue directing the trial court to vacate its orders deeming the discovery responses verified and to conduct such further proceedings as are appropriate and consistent with the views expressed herein. Each party shall bear its own costs in these appellate proceedings.

### CERTIFIED FOR PUBLICATION

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

ALDRICH, J.