**CUSTOM DESIGNS & MANUFACTURING COMPANY, et al., Appellee**

v.

**SHERWIN–WILLIAMS COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 26, 2011.

Filed Feb. 15, 2012.

* Retired Senior Judge assigned to the Superior Court.

Thomas Finarelli, Philadelphia, for appellant.

Kevin P. Smith, Ft. Washington, for appellee.

BEFORE: DONOHUE, OLSON and STRASSBURGER *, JJ.

OPINION BY STRASSBURGER, J.:

Sherwin–Williams Company (Sherwin–Williams) appeals the trial court order entered on March 31, 2011, in which the trial court granted the motion to compel discovery filed by Custom Designs & Manufacturing Company's (Custom Designs) upon a finding that two memoranda in the possession of Sherwin–Williams are discoverable and not protected by attorney-client privilege. We affirm.

The trial court aptly summarized the relevant factual and procedural history of this case.

> At all times relevant hereto, the Plaintiff Custom Designs & Manufacturing Company, Inc. (Custom Designs) was engaged in whole or in part in the business of manufacturing and/or assembling custom cabinets.
>
> On or about November 4, 2002, the building and corresponding business in which Custom Designs was located was significantly damaged by fire.
>
> On or about May 21, 2004, Custom Designs filed a civil action against the Defendant Sherwin[-]Williams alleging in whole or in part that Sherwin[-]Williams' products self-heated or spontaneously-combusted, thereby causing the subject fire and resulting damages.
>
> The day after the fire, more specifically on November 5, 2002, Mr. Joseph Schreck [ (Schreck) ], a marketing representative for Sherwin[-]Williams, and another employee, Mr. Robert Myers [ (Myers) ] visited the site of the fire. The purpose of the visit, in whole or in part, was to offer assistance and help the owners out. During this visit, Schreck and Meyers allegedly talked to a Mr. Bob Lastarza [ (Lastarza) ], an employee of Custom Designs. Mr. Lastarza allegedly told them that, prior to the fire, he saw the "flickering of lights."

---

* Retired Senior Judge assigned to the Superior Court.

On or about November 21, 2002; Defendant Sherwin[-] Williams was placed on notice of a potential claim.

On or about December 5, 2002, Mr. Schreck prepared and authored two memoranda that were directed to Attorney Ronald M. Tamburrino [ (Tamburrino) ], counsel for Sherwin[-]Williams. [In a 2004 discovery request, Custom Designs requested copies of statements and or summaries of interviews of any persons having knowledge of the fire. Sherwin–Williams responded to Custom Designs' interrogatory that the only known statements were either (1) already in the possession of Custom Designs or (2) contained within the Pennsylvania State Police Fire Investigation Report. During depositions on June 22, 2010, Schreck and Meyers testified to the existence of two memoranda prepared by Schreck regarding Schreck's observations of the scene the day following the fire and the conversation with Lastarza.] Mr. Schreck does not recall whether he prepared these memoranda on his own or whether he was asked to prepare same. One of the memoranda, in whole or in part, addresses the subject matter of the Lastarza conversation noted above.

[Custom Designs] made a formal request for these memoranda. [Sherwin–Williams] had objected to the production of these documents on the basis of attorney-client privilege and attorney work product protection.[1]

[Custom Designs] correspondingly filed a Motion to Compel the production of these documents. The matter was presented to the Discovery Master, Attorney Richard Campagna. By Decision dated October 29, 2010, the Discovery Master granted [Custom Designs'] Motion concluding that he finds "nothing objectionable in the documents submitted ..."

Trial Court Order, 3/31/2011, at 1–2 (internal citations and paragraph numbering omitted).

Sherwin–Williams appealed from the Discovery Masters' order. Both parties submitted briefs to the trial court. On March 31, 2011, the trial court issued an order denying Sherwin–Williams' appeal and granting Custom Design's request to compel discovery. This appeal followed.

Sherwin–Williams asks us to consider whether "intra-company communications concerning an impending claim to the in-house counsel responsible for providing legal advice with respect to that claim [are] protected by the attorney-client privilege." Sherwin–Williams' Brief at 2.

■ We must first consider whether this appeal, which is of an interlocutory order, is properly before us. Our Supreme Court has recently held that orders overruling claims of privilege and requiring disclosure are immediately appealable. *See Commonwealth v. Harris*, 32 A.3d 243 (Pa.2011). Likewise, this Court has recently held that appeals from orders granting discovery in the face of colorable claims of attorney-client privilege are appealable under the collateral order doctrine.[2] *Id.; Law Office of Douglas T.*

---

1. At oral argument before this Court, counsel for Sherwin–Williams conceded that the documents in question are not protected as attorney work-product. Thus, we will not discuss the applicability of the work-product doctrine.

2. The collateral order doctrine permits an appeal as of right from a non-final order if the order is separable from and collateral to the main action, involves a right too important to be denied review, and involves a claim that will be irreparably lost if review is postponed until final judgment. *Gocial v. Independence Blue Cross*, 827 A.2d 1216, 1220 (Pa.Super.2003) (citing Pa.R.A.P. 313).

*Harris, Esquire v. Philadelphia Waterfront Partners, LP*, 957 A.2d 1223, 1228–1229 (Pa.Super.2008). Accordingly, we will consider the merits of the present appeal.

Sherwin–Williams claims that the trial court erred in ordering the production of memoranda authored by Schreck and forwarded to in-house counsel Tamburrino. Sherwin–Williams argues that these documents are privileged as they were created to provide Tamburrino with the relevant facts from which he could begin his legal analysis of the Custom Designs suit.

■ "The question of whether attorney-client privilege protects a particular communication from disclosure is a question of law. As such, we employ a *de novo* standard of review and our scope of review is plenary." *Carbis Walker, LLP v. Hill, Barth & King, LLC*, 930 A.2d 573, 581 (Pa.Super.2007).

■ In Pennsylvania, the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice. *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa.2011); *see* 42 Pa.C.S. § 5928. In describing the purpose of the privilege, we have said: "The attorney-client privilege exists to foster a confidence between attorney and client that will lead to a trusting and open dialogue." *Gocial v. Independence Blue Cross*, 827 A.2d 1216, 1222 (Pa.Super.2003).

■ Pennsylvania law imposes a shifting burden of proof in disputes over disclosure of communications allegedly protected by attorney-client privilege. The party invoking a privilege must initially "set forth facts showing that the privilege has been properly invoked; then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure will not violate the attorney-client privilege, e.g., because the privilege has been waived or because some exception applies." *Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1266 (Pa.Super.2007) (citations omitted), *aff'd*, 605 Pa. 468, 992 A.2d 65 (2010). Accordingly, "[i]f the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, then the burden never shifts to the other party, and the communication is not protected under attorney-client privilege." *Id.* at 1267.

■ Four elements must be satisfied in order to invoke successfully the protections of attorney-client privilege:

1) The asserted holder of the privilege is or sought to become a client.

2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

4) The privilege has been claimed and is not waived by the client.

*Id.* at 1264 (citations omitted).

■ Instantly, the attorney-client privilege has been invoked by a corporate client. As our Commonwealth Court has previously recognized "this privilege attaches to communications made by corporate as well as individual clients." *Maleski v. Corporate Life Insurance Co.*, 163 Pa.Cmwlth. 36, 641 A.2d 1, 3 (1994) (citing *Upjohn v. United States*, 449 U.S. 383, 101

S.Ct. 677, 66 L.Ed.2d 584 (1981)).[3]

Mindful of these principles, we consider whether the documents at issue in the present case are protected from disclosure by application of attorney-client privilege. The parties concede that the first, second and fourth elements of the test outlined in *Nationwide, supra,* have been satisfied. Sherwin–Williams' Brief at 7; Custom Designs' Brief at 9. Thus, we focus on the third requirement, whether the communication "relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter[.]" *Nationwide, supra.*

Relying on the United States Supreme Court's rationale in *Upjohn v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), Sherwin–Williams claims that the communications at issue are protected as they provided Tamburrino with the factual background necessary to begin his analysis of the Custom Designs lawsuit. In *Gillard, supra,* our Supreme Court adopted the broad range derivative protection of attorney-client privilege advocated by the Court in *Upjohn.* Further, recent decisions of the Commonwealth Court, as well as federal dispositions from the Eastern District of Pennsylvania, present a consistent and coherent application of *Upjohn.* See *Maleski v. Corporate Life Insurance Co.,* 163 Pa.Cmwlth. 36, 641 A.2d 1, 3 (1994) (citing *Upjohn* in holding that attorney-client privilege attaches to communications made by corporate as well as individual

clients); *Gould v. City of Aliquippa,* 750 A.2d 934 (Pa.Cmwlth.2000) (relying on *Upjohn* in determining that oral statements taken by the City's attorney from City employees authorized to act on behalf of the City were protected by attorney-client privilege); *National Railroad Passenger Corp. v. Fowler,* 788 A.2d 1053 (Pa.Cmwlth.2001) (applying rationale of *Upjohn* to determine that attorney-client privilege between youth residence and its attorney extended to employees of residence, absent allegation that employees were not authorized to act on behalf of residence); *see also In re Ford Motor Company,* 110 F.3d 954, 965 (3d Cir. 1997), *abrogated on other grounds,* (stating that, under Pennsylvania law, a "corporation may claim the [attorney-client] privilege for [confidential] communications [made for the purpose of obtaining legal advice] between its counsel and its employees who have authority to act on its behalf").

In *Upjohn,* the Internal Revenue Service sought disclosure of written questionnaires that had been prepared by corporate counsel, sent to and filled out by manager-employees, and then returned to corporate counsel. The questionnaires were part of an internal investigation conducted by counsel for Upjohn in order to determine the nature and magnitude of potentially illegal payments that had been made to foreign government officials. *Id.* at 386–87, 101 S.Ct. 677. The Court held that consistent with the underlying purposes of the attorney-client privilege, the questionnaires were protected from dis-

3. The Commonwealth Court has addressed in detail the issue of whether corporate employees are protected by attorney-client privilege when providing information to the corporation's counsel. Although we are not bound by the holdings of the Commonwealth Court, we have found that court's insight into these issues both illuminating and persuasive. *See*

*Nationwide, supra,* n. 2. ("We recognize that we are not bound by the holdings of the Commonwealth Court, but we find that Court's articulation of the structure of the attorney-client privilege analysis to be cogent as well as consistent with case law from the Superior Court.")

covery. *Id.* at 395, 101 S.Ct. 677. The Court noted that middle- or even lower-level corporate employees may have information, not available to upper management, which corporate counsel needs in order to provide legal advice. *Id.* at 391–92, 394, 101 S.Ct. 677. The Court emphasized that the questioned Upjohn employees were aware that the purpose of the internal investigation, of which the questionnaires were a part, was for the corporation to secure legal advice from counsel. *Id.* at 394, 101 S.Ct. 677. A policy statement that accompanied the questionnaire indicated the legal implications of the internal investigation. *Id.* In addition, the Court emphasized that the questionnaires were confidential. The employees who received questionnaires were instructed to keep the investigation highly confidential. *Id.* at 387, 395 and n. 5, 101 S.Ct. 677. The employees were not permitted to discuss the questionnaires with anyone except other Upjohn employees who might be helpful in providing the requested information, and the responses were returned directly to corporate counsel. *Id.* at 387, 101 S.Ct. 677. Upjohn maintained the confidentiality of the questionnaires; the responses were not disclosed to anyone except counsel. *Id.* at 395 and n. 5, 101 S.Ct. 677.

While deciding that application of the attorney-client privilege was appropriate in *Upjohn*, the Supreme Court noted that the privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Id.* at 395, 101 S.Ct. 677. Additionally the Court recognized that the privilege does not extend to business advice or protect clients from factual investigations. *Id.* at 395–396, 101 S.Ct. 677. In other words, a fact does not enter into a non-discoverable sphere solely by virtue of its having been communicated to counsel.

■ Instantly, Sherwin–Williams' contention that Schreck prepared the memoranda at the request of corporate counsel is not supported by the record. At his deposition on June 22, 2010, Schreck was specifically cross-examined on this point:

[Attorney Hogan, counsel for Custom Designs]: This memo, when did you prepare that?

[Schreck]: I prepared that on December 2nd, give or take a day.

[Attorney Hogan]: Does your memo contain any information about your conversation with Mr. Lastrada [sic]?

[Schreck]: Yes.

[Attorney Hogan]: Were you asked to prepare that memo by counsel for Sherwin–Williams?

[Schreck]: I don't know if I was asked to prepare it or if I just volunteered the information that I had regarding the fire.

[Attorney Hogan]: Well, this would have been a month after your visit, right?

[Schreck]: Correct.

[Attorney Hogan]: And that's when you prepared the memo?

[Schreck]: Yes.

[Attorney Hogan]: And you don't know if you prepared it on your own or if you were directed to?

[Schreck]: Correct.

[Attorney Hogan]: Do you know who you gave the memo to?

[Schreck]: Yes.

[Attorney Hogan]: Who?

[Schreck]: Ron [Tamburrino], our Cleveland attorney.

Schreck Deposition, 6/22/2010, at 156–157.

When asked about the purpose of his visit to the Custom Designs facility the day after the fire, Schreck indicated that it was his idea to visit the scene because

[b]eing a very large customer of mine, I was concerned if there was a fire and what the damages may have been. Of course, if they had burned the plant to the ground or however damaged it, that would infringe upon ability to sell them coatings, so there was some concerns, as well as concerns for them as a customer to see what happened and render any aid, if necessary, that we could do, such as finding, perhaps, another shop that could pick up some of their work for them to fill in and help them out during the course of whatever may occur.

*Id.* at 148.

Sherwin–Williams contends that "the only rational inference [we can make from Schreck's deposition testimony] is that the request for the memoranda, directly or indirectly, came from Tamburrino." Sherwin–William's Brief at 8. Sherwin–Williams goes on to argue that "[a]s *Upjohn* recognizes, Tamburrino's purpose provides the basis for the protection afforded by the privilege, and his purpose was to gather information from which he could best advise his client." *Id.* at 9. We disagree.

The holding in *Upjohn* specifies that communications by corporate employees to corporate counsel may fall within the scope of the attorney-client privilege when they are kept confidential and when they are made at the behest of counsel and with the goal of furthering counsel's provision of legal advice to the client, the corporation. Sherwin–Williams, as the party asserting attorney-client privilege, bears the initial burden of producing sufficient facts to show that it has properly invoked the privilege for the communications that it has declined to disclose. Sherwin–Williams has not presented an affidavit, statement or testimony by Tamburrino to clarify whether he requested Schreck produce the memoranda at issue or for what purpose he requested the documents. In fact, Sherwin–Williams attempts to place the burden on Custom Designs to produce evidence that the memoranda were created for a purpose other than to secure legal advice. Sherwin–Williams' Brief at 7 ("The truth is there is absolutely no evidence that the memoranda were created for any purpose *other than* the purpose of securing legal advice.") (emphasis in original).

Further, the circumstances surrounding the confidentiality of the memoranda here differ from the facts in *Upjohn*. In *Upjohn*, counsel was actively conducting an investigation, and the employees involved were simultaneously informed of the confidential nature of their answers and the legal implications of the investigation. Here, Schreck testified that his purpose in visiting the site of the Custom Designs fire was based on his concern about the implications the fire could have on what he described as a "very large customer." Schreck Deposition, 6/22/2010, at 156. He was not asked to investigate the fire in preparation for litigation; rather, he went to the site for the purpose of aiding a major client.

As we previously stated, the burden is firmly on the shoulders of Sherwin–Williams to produce evidence that the communication "relates to a fact of which the attorney was informed by his client ... for the purpose of securing either an opinion of law, legal services or assistance in a legal matter[.]" *Nationwide, supra*. As both the master and the trial court recognized, Sherwin–Williams has failed to meet its burden in this regard. Trial Court Order, 3/31/2011, at 6. Accordingly, we hold that the privilege has not been properly invoked. *Id.* As we have determined that Sherwin–Williams has failed to meet its initial burden, we need not consider

whether Sherwin–Williams has waived protection of the privilege. *Id.*

After thorough review, we conclude that Sherwin–Williams' claim of attorney-client privilege for the disputed documents has no merit. Accordingly, we affirm the trial court order requiring the production of the memoranda authored by Schreck.

Order affirmed. Jurisdiction relinquished.

Judge OLSON files a Concurring and Dissenting Statement.

## CONCURRING AND DISSENTING STATEMENT BY OLSON, J.:

I both concur and dissent from the decision rendered by the learned Majority. Because I find that Sherwin–Williams failed to discharge its burden of producing sufficient facts to show that it has properly invoked the attorney-client privilege, I agree that the order requiring production of Joseph Schreck's memoranda should be affirmed.[1] I write separately, however, to express my concern that the Majority has improperly emphasized Mr. Schreck's reasons for visiting the site of the Custom Design fire as part of its rationale in rejecting Sherwin–Williams' privilege claim. In my view, the facts and circumstances surrounding the preparation and dissemination of the memoranda should be the sole focus of our privilege inquiry. Accordingly, for the reasons set forth below, I dissent from this aspect of the Majority's opinion.

In examining Sherwin–Williams' claim, the Majority finds that Mr. Schreck's purpose for visiting the site of the fire arose from his concern about a very large customer. Majority Opinion at 379–80. The Majority then observes that, at the time he visited the site, Mr. Schreck had not been asked to investigate the fire for purposes of litigation. *Id.* at 379–80. The Majority relies upon these factors in distinguishing this case from the circumstances before the United States Supreme Court in *Upjohn v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), where that Court rejected a request for disclosure by the Internal Revenue Service of written questionnaires used by Upjohn's counsel to gather information for an internal probe. Based in part on these distinctions, the Majority concludes that Sherwin–Williams failed to establish that Mr. Schreck's memoranda were protected by the attorney-client privilege.

I believe that the Majority's analysis in this respect is mistaken. As the Majority acknowledges, the questionnaires in *Upjohn* were protected by the attorney-client privilege because they were part of an internal company investigation into an ongoing legal matter, because they were generated for the purpose of securing legal advice, and because they were confidential. *See* Majority Opinion at 377–78. As the Majority also recognizes, the attorney-client privilege prevents disclosure of communications to an attorney but not the facts that are included within a privileged communication. *Id.* at 378.

In applying these principles to the facts before us, it is clear that Mr. Schreck's

---

1. The record is clear that very little is known about Mr. Schreck's reasons for drafting the memoranda. As the quoted passages of Mr. Schreck's deposition testimony demonstrate, Mr. Schreck does not recall whether he was instructed to draft the memoranda or who directed him to prepare those materials. *See* Majority Opinion at 378. In the absence of an affidavit or testimony from counsel for Sherwin–Williams explaining who directed Mr. Schreck to generate the challenged memoranda, and for what purpose the memoranda were generated, I believe that the Majority correctly concludes that Sherwin–Williams has failed to meet its burden of showing that the requested materials were privileged.

reasons for visiting the site of the fire are irrelevant and need not be considered for purposes of our present inquiry. In *Upjohn,* the circumstances surrounding the preparation and dissemination of the requested communications were the exclusive focus of the Court's privilege analysis. Nowhere in the *Upjohn* decision does the Court consider why or how the Upjohn employees obtained relevant information in its assessment of whether and to what extent the attorney-client privilege should apply to the requested questionnaires. The practical reasons for this approach are obvious: rarely, if ever, will a corporate employee acquire information at the behest of counsel for the company **before** a claim has been filed.

In the present case, the Majority concludes, in part, that Sherwin-Williams failed to properly invoke the attorney-client privilege because Mr. Schreck visited the site of the fire to aid a major client and because he was not investigating the fire in preparation for litigation. The record, however, confirms that Sherwin-Williams did not receive notice of a potential claim until after Mr. Schreck conducted his site visit. Prior to that time, counsel for the company had no reason to commence an investigation or to instruct a company employee to begin to collect information in preparation for litigation. The Majority's effort to consider the reasons underlying Mr. Schreck's site visit in assessing the privilege status of his memoranda is unwarranted under *Upjohn* and unnecessary since the facts gathered during his visit are not protected by the attorney-client privilege. Instead, the focus in determining whether the memoranda are protected by the attorney-client privilege should be the purpose for which Mr. Schreck **prepared** the memoranda and the facts and circumstances surrounding the preparation and dissemination (*i.e.,* were they prepared at the request of counsel;

were they prepared as part of counsel's internal investigation; were they only disseminated to counsel, etc.) Because I cannot agree with this aspect of the Majority's reasoning, I concur only in the Majority's conclusion that Sherwin-Williams failed to produce sufficient facts to show that it properly invoked the attorney-client privilege.