J-A29038-14

2015 PA Super 5

| | | |
|---|---|---|
| RED VISION SYSTEMS, INC. AND TITLEVISION TEXAS, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NATIONAL REAL ESTATE INFORMATION SERVICES, L.P., NATIONAL REAL ESTATE INFORMATION SERVICES, INC., AND NREIS OF TEXAS, LLC | : | |
| | : | |
| APPEAL OF: THOMAS K. LAMMERT, JR. | : | No. 416 WDA 2014 |

Appeal from the Order Entered February 26, 2014
in the Court of Common Pleas of Allegheny County,
Civil Division, at No(s): GD13-008572

BEFORE:    FORD ELLIOTT, P.J.E., ALLEN, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:          **FILED JANUARY 13, 2015**

Thomas K. Lammert, Jr. (Lammert), a non-party to this action, appeals from the February 26, 2014 order which denied his motion to quash subpoena and for protective order. Also before us is the motion of appellees Red Vision Systems, Inc. and Titlevision Texas, LLC (Plaintiffs, collectively) to quash some issues raised in the appeal. After careful review, we grant in part and deny in part Plaintiff's motion, and affirm the trial court's February 26, 2014 order.

This action was filed by Plaintiffs against National Real Estate Information Services, L.P. (NREIS, L.P.), National Real Estate Information Services, Inc. (NREIS, Inc.), and NREIS of Texas, LLC (Defendants, collectively). Plaintiffs are affiliated companies which provide real estate

_____

*Retired Senior Judge assigned to the Superior Court.

services such as title searches to customers throughout the United States. Complaint, 5/14/2013, at 3. Plaintiffs filed a complaint in the Allegheny County Court of Common Pleas alleging that they performed a variety of services for Defendants pursuant to a number of different agreements and that Defendants failed to pay invoices for those services totaling more than $500,000. *Id.* at 3-6.

When Plaintiffs' attempts in May and June of 2013 to serve Defendants with the complaint pursuant to Pa.R.C.P. 400(a) were unsuccessful, they received permission to serve Defendants through certified mail and publication pursuant to Pa.R.C.P. 430. Order, 9/23/2013. Accordingly, Plaintiffs published notice of suit and notice to defend in the Pittsburgh Post-Gazette and Pittsburgh Legal Journal, and served NREIS of Texas by certified mail. Affidavit of Service, 9/27/2014; Affidavit of Service, 11/15/2013. Plaintiffs subsequently learned that each defendant corporation was defunct and/or dissolved.

Believing that Defendants transferred substantial assets to other entities in order to avoid paying creditors such as Plaintiffs, Plaintiffs sought "to obtain information relating to the disposition of [D]efendants' assets and to identify possible sources of recovery." Trial Court Opinion and Order, 2/26/2014, at 1. Such information might enable Plaintiffs "to amend their Complaint to raise causes of action based on the law governing fraudulent transfers." *Id.* The only source of such information of which Plaintiffs are

aware is Lammert, who had been in-house counsel to each of Defendants, was an officer of NREIS, Inc. prior to its interests in NREIS, L.P. being sold, and a manager of NREIS Texas, which was a subsidiary of NREIS, L.P., and NREIS, LLC. Reply Brief to Plaintiffs' Brief in Opposition to Quash Subpoena, 12/12/2013, at 2.

On September 23, 2013, Plaintiffs filed a notice of intention to serve Lammert with a subpoena to attend and testify. In addition to requiring his testimony, the subpoena required Lammert to produce documents related to the identification of Defendants' management personnel and insurance coverage, and any transfer of Defendants' assets. Subpoena to Attend and Testify, 9/17/2013, at Exhibit 1.

Lammert filed a motion to quash the subpoena, claiming that many of the requested documents are protected by the attorney-client privilege,[1] or would require the disclosure of sensitive information of third parties subject to non-disclosure agreements. Motion to Quash Subpoena and for Protective

_____

[1] Lammert also made arguments as to work-product privilege. Although he raises the argument in his brief on appeal, Lammert's Brief at 34-36, no issue related to the applicability of the work-product privilege is included in his statement of questions presented or fairly suggested thereby. Accordingly, we will not consider the argument. *See Nolt v. TS Calkins & Associates, LP*, 96 A.3d 1042, 1047 n.4 (Pa. Super. 2014) ("As the [appellants] did not raise this issue in their statement of questions involved, it is waived and we will not address it."); Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

Order, 12/2/2013,[2] at 3. Lammert further claimed that he would incur a "considerable burden and expense" in reviewing and categorizing the records, which are electronically-stored. *Id.* Plaintiffs filed an answer to Lammert's motion contesting the existence of any privilege, agreeing to the entry of a protective order to limit Plaintiffs' use of confidential information, and claiming that Lammert failed to demonstrate that complying with the subpoena would be unduly burdensome. Answer to Motion to Quash Subpoena and for Protective Order, 11/19/2013, at 5-9.

The trial court denied Lammert's motion by an opinion and order filed February 26, 2014, holding (1) the attorney-client privilege did not protect Defendants' documents because Defendants no longer existed or had interests in need of protection; (2) Lammert would not violate any confidentiality agreements by producing documents pursuant to court order; and (3) because he need not concern himself with applicability of privilege or confidentiality agreement, Lammert may "blindly turn over" the documents, and thus need not undergo any burdensome review of the documents. Trial Court Opinion and Order, 2/26/2014, at 3-4.

On March 12, 2014, Lammert filed a notice of appeal. That same day, the trial court filed an order pursuant to Pa.R.A.P. 1925(a), indicating that the reasons for its decision were provided in its February 26, 2014 opinion.

---

[2] Lammert's motion was served upon Plaintiffs on November 4, 2013, but was not docketed until December 2, 2013, after he presented it to the Honorable R. Stanton Wettick, Jr. on November 15, 2013.

Lammert presents the following questions for this Court's review.[3]

1. Whether the attorney-client privilege survives the dissolution of a limited liability company, limited partnership, corporation or other legal entity, particularly when the legal entity continues to be subject to suit in the courts of the Commonwealth?

2. Whether former counsel to a dissolved limited liability company, limited partnership, corporation or other legal entity may invoke the attorney-client privilege on behalf of the legal entity?

3. Whether the Court of Common Pleas erred in denying Appellant's Motion to Quash Subpoena and for Protective Order where Appellant will be required to blindly produce confidential non-public personal information of third-parties and documents of clients other than Defendants?

4. Whether the Court of Common Pleas erred in requiring Appellant to produce the subpoenaed documents, which are essentially pre-complaint discovery, despite the unreasonable burden to Appellant?

Lammert's Brief at 3 (trial court answers omitted).

We begin by considering our jurisdiction over this appeal. Lammert asserts that the trial court's interlocutory order is immediately appealable as a collateral order under Pa.R.A.P. 313. Lammert's Brief at 1.

> Generally, discovery orders are not appealable as they do not dispose of the litigation. However, Pennsylvania Rule of Appellate Procedure 313 provides that appeals may be taken from collateral orders, that is, those which are separable from and collateral to the main cause of action where the right is too important to be denied review and the question presented is

---

[3] The issues have been briefed in this Court not only by Lammert and Plaintiffs, but also by *amicus curiae*, the Association of Corporate Counsel (ACC) and three of its Pennsylvania chapters.

such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

*PECO Energy Co. v. Insurance Co. of North America*, 852 A.2d 1230, 1233 (Pa. Super. 2004) (citations and quotation marks omitted). "Rule 313 must be interpreted narrowly, and each of the above prongs must be clearly present for an order to be considered collateral." *J.S. v. Whetzel*, 860 A.2d 1112, 1117 (Pa. Super. 2004). Further, we apply the three-prong collateral order test separately to each issue raised in the appeal. *Rae v. Pennsylvania Funeral Directors Ass'n*, 977 A.2d 1121, 1123 (Pa. 2009).

"Appellate review is appropriate when a colorable claim of privilege is asserted." *PECO Energy Co.*, 852 A.2d at 1233. Because Lammert's first two questions raise a colorable claim of attorney-client privilege, "we find the instant discovery order collateral and appealable as it implicates potentially privileged material." *Id.*

Plaintiffs have filed a motion to quash this appeal in part. While they do not contest that Lammert's first and second questions are properly before us under Rule 313, Plaintiffs argue that Lammert's third and fourth questions do not meet the requisites of a collateral order. Appellees' Motion to Quash Issues to Be Raised on Appeal (Appellees' Motion), 4/2/2014, at 5-7.

While not contesting its severability from the main cause of action, Plaintiffs maintain that Lammert's third question "involves no claim of privilege sought to be protected but rather is a standard confidentiality

objection to a discovery request." Appellees' Motion, 4/2/2014, at 5. Plaintiffs argue that the question does not involve "a deeply rooted public policy right too important to be denied review." *Id.* Plaintiffs also claim that postponement of review will not result in irreparable loss because no privilege is destroyed. *Id.* at 6.

Lammert counters that the right to privacy of personal information has been recognized as sufficiently important to satisfy the collateral-order test. Opposition to Plaintiffs' Motion, 4/9/2014, at 6. For example, in *J.S.*, 860 A.2d at 1117, this Court held that an expert witness's "privacy interest in his income information raises a sufficiently important public policy concern" to warrant Rule 313 review of an order requiring him to produce IRS tax forms. Further, Lammert contends, once the sensitive, confidential information of the non-parties is disclosed, "the confidentiality attaching to this information is lost." Opposition to Plaintiffs' Motion, 4/9/2014, at 8 (emphasis omitted) (quoting *Jones v. Faust*, 852 A.2d 1201, 1203 (Pa. Super. 2004)).

As for the documents which he claims are subject to "non-disclosure or confidentiality agreements" in the instant case, Lammert offers virtually no description. Lammert's Brief at 41. Rather, we are left to guess precisely what "confidential, sensitive and non-public personal information" is contained in these documents. *Id.* Without any indication of what type of information is contained in the documents, we are unable to determine that Lammert is seeking review of an important issue rooted in Pennsylvania

public policy. Further, Plaintiffs have agreed to the entry of a protective order "to safeguard confidential documents and information." Brief in Opposition to Motion to Quash Subpoena, 12/30/2013, at 4 and Exhibit 2. *See Gunn v. Automobile Ins. Co. of Hartford, Connecticut*, 971 A.2d 505, 512 (Pa. Super. 2009) (holding collateral order test not satisfied where only generalized, speculative concerns about possible privilege were asserted and confidentiality could be protected by entry of a protective order).

Plaintiffs also maintain that Lammert's fourth question, related to the burden he will sustain in complying with Plaintiffs' subpoena, fails to satisfy any of the prongs of the collateral order test. Plaintiffs' Motion, 4/2/2014, at 7. In his response, Lammert offers no argument as to what public policy will be offended if this issue is not reviewed immediately, let alone authority in support. Nor does he explain how his claim about the unreasonableness of the burden placed upon him will be irretrievably lost if review is delayed. Indeed, from the record before us, we are unable to ascertain what burden he will suffer in obeying the trial court's order.

Accordingly, we hold that Lammert's third and fourth issues do not satisfy the collateral order test, and we grant Plaintiffs' motion to quash this appeal as to those issues.

Having established the extent of our jurisdiction, we turn to the merits of the issues properly before us. Lammert's first two questions present this

Court with an issue of first impression in Pennsylvania: whether the attorney-client privilege survives the dissolution of a business entity. The question is purely one of law. "The standard of review of questions of law is *de novo*, and the scope of review is plenary." *Clarke v. MMG Ins. Co.*, 100 A.3d 271, 275 (Pa. Super. 2014).

We begin by examining the nature and extent of privilege under Pennsylvania law,[4] and the policies upon which it is based. "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.C.S. § 5928.

Although it is now embodied in a statute, "[t]he attorney-client privilege has deep historical roots and indeed is the oldest of the privileges for confidential communications in common law." *Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1263 (Pa. Super. 2007). The privilege is available to corporate as well as individual clients. *Custom Designs & Mfg. Co. v. Sherwin-Williams Co.*, 39 A.3d 372, 376 (Pa. Super. 2012).

---

[4] As there is no Pennsylvania case law on point to Lammert's first two issues, he and Plaintiffs rely upon other state and federal court cases, including cases from the United States Supreme Court. Although none of them is binding upon this Court in determining this issue of Pennsylvania law, we may consider these cases for their persuasive value. *Eckman v. Erie Ins. Exchange*, 21 A.3d 1203, 1207 (Pa. Super. 2011).

"[W]hen the client is a corporation, the privilege extends to communications between its attorney and agents or employees authorized to act on the corporation's behalf." **Pennsylvania State University v. W.C.A.B. (Sox)**, 83 A.3d 1081, 1092 (Pa. Cmwlth. 2013) (quoting **In re Condemnation by City of Philadelphia in 16.2626 Acre Area**, 981 A.2d 391, 396 (Pa. Cmwlth. 2009)).[5]  There are few Pennsylvania appellate court decisions discussing the attorney-client privilege in the corporate setting.  However, the United States Supreme Court offered the following discussion, often utilized by courts determining the issue before us, of how the practical workings of the privilege differ when a corporation, rather than an individual, is the client.

> The administration of the attorney-client privilege in the case of corporations… presents special problems.  As an inanimate entity, a corporation must act through agents.  A corporation cannot speak directly to its lawyers.  Similarly, it cannot directly waive the privilege when disclosure is in its best interest.  Each of these actions must necessarily be undertaken by individuals empowered to act on behalf of the corporation.
>
> * * *
>
> [F]or solvent corporations, the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors.  The managers, of course, must exercise the privilege

---

[5] "The Commonwealth Court has addressed in detail the issue of whether corporate employees are protected by attorney-client privilege when providing information to the corporation's counsel.  Although we are not bound by the holdings of the Commonwealth Court, we have found that court's insight into these issues both illuminating and persuasive." **Custom Designs & Mfg. Co.**, 39 A.3d at 377 n.3.

in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals.

* * *

[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. New managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors. Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties.

*Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 348-49 (U.S. 1985) (holding that, because role of bankruptcy trustee was analogous to solvent corporation's management, trustee could waive the privilege as to pre-bankruptcy communications). *Accord Maleski v. Corporate Life Ins. Co.*, 641 A.2d 1, 3 (Pa. Cmwlth. 1994) (citing 15 Pa.C.S. § 1721 and *Weintraub*).

Our Supreme Court has explained that the purpose of the privilege

is to encourage clients to provide information freely to their attorneys to allow the attorney to give sound and informed advice to guide their clients' actions in accordance with the law. As the privilege encourages clients to speak openly with their counsel, we recognize that in many cases, [t]he privileged communications kept from the court do not really represent a loss of evidence since the client would not have written or uttered the words absent the safeguards of the attorney-client privilege. We are further cognizant that to attain the privilege's goals, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege ... is little better than no privilege at all.

*Levy v. Senate of Pennsylvania*, 65 A.3d 361, 371 (Pa. 2013) (internal citations and quotation marks omitted).

Our Supreme Court has noted "the ongoing tension between the two strong, competing interests-of-justice factors in play - namely - the encouragement of trust and candid communication between lawyers and their clients, and the accessibility of material evidence to further the truth-determining process." *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 57 (Pa. 2011) (citation omitted). Regarding the latter interest, our Supreme Court has explained as follows.

> [E]videntiary privileges are not favored. [E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth. Thus, courts should accept testimonial privileges only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.

*Commonwealth v. Stewart*, 690 A.2d 195, 197 (Pa. 1997) (internal citations and quotation marks omitted).

"The privilege exists only to aid in the administration of justice, and when it is shown that the interests of the administration of justice can only be frustrated by the exercise of the privilege, the trial judge may require that the communication be disclosed." *Cohen v. Jenkintown Cab Co.*, 357 A.2d 689, 693-94 (Pa. Super. 1976) (*en banc*). For example, there is an exception to the privilege where "the client has attacked the integrity and

professionalism of counsel." **Salsman v. Brown**, 51 A.3d 892, 895 (Pa. Super. 2012). Similarly, "if the legal advice sought from counsel is for the purpose of committing a crime, the attorney-client privilege does not apply." **In re Thirty-Third Statewide Investigating Grand Jury**, 86 A.3d 204, 217 (Pa. 2014).

Conversely, if the private good of protection from the harm that could come with disclosure of attorney-client communications is not furthered by application of the privilege, it is inapplicable:

> It is for the protection and security of clients that their attorneys at law or counsel are restrained from giving evidence of what they have had communicated and intrusted to them in that character; so that legal advice may be had at any time by every man who wishes it in regard to his case, whether it be bad or good, favorable or unfavorable to him, without the risk of being rendered liable to loss in any way, or to punishment, by means of what he may have disclosed or intrusted to his counsel. But where it is impossible, that the rights or the interests of the client can be affected by the witness's giving evidence of what came to his knowledge by his having been counsel and acted at the time as attorney or counsel at law, the rule has no application whatever, because the reason of it does not exist.

**Cohen**, 357 A.2d at 692 (quoting **Hamilton v. Neel**, 7 Watts 517, 521 (Pa. 1838)) (emphasis omitted).

Thus, the privilege is not absolute, and "Pennsylvania law imposes a shifting burden of proof in disputes over disclosure of communications allegedly protected by attorney-client privilege." **Custom Designs & Mfg. Co.**, 39 A.3d at 376.

The party invoking a privilege must initially set forth facts showing that the privilege has been properly invoked; then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure will not violate the attorney-client privilege, *e.g.*, because the privilege has been waived or because some exception applies. Accordingly, [i]f the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, then the burden never shifts to the other party, and the communication is not protected under attorney-client privilege.

*Id.* (internal citations and quotation marks omitted).

In order to invoke the privilege properly and shift the burden to the party seeking disclosure to prove waiver or an exception, the following elements must be established:

1) The asserted holder of the privilege is or sought to become a client.

2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

4) The privilege has been claimed and is not waived by the client.

*Fleming*, 924 A.2d at 1264 (quoting *Commonwealth v. Mrozek*, 657 A.2d 997, 998 (Pa. Super. 1995)).

With these principles in mind, we turn to the precise issue before us: whether Lammert properly invoked the attorney-client privilege on behalf of Defendants. As noted earlier, there is no Pennsylvania precedent on point.

The only decision from a Pennsylvania appellate court touching on the issue is **Maleski**, *supra*, a single-judge opinion regarding a motion for reconsideration of a Commonwealth Court order.

In **Maleski**, Corporate Life had been found insolvent and ordered to be dissolved and liquidated. 641 A.2d at 2. The Commonwealth Court also ordered Corporate Life's attorneys to give to the statutory liquidator all files related to its representation of Corporate Life. **Id.** The law firm asserted attorney-client privilege, and asked the court to reconsider its ruling. After examining **Weintraub** and its reasoning in holding that a bankruptcy trustee held the power to waive the privilege that had been held by the now-bankrupt company, the court determined that the statutory liquidator obtained the authority to waive the privilege "as the management successor to the former directors and officers of Corporate Life…." **Id.** at 4.

The issue before the **Maleski** court was whether the statutory liquidator had the power to waive the privilege. It is unclear to what extent the client corporation was still functioning at the time of the order, and the issue of whether the privilege continued to exist after dissolution was ordered does not appear to have been questioned. Accordingly, we turn to the cases cited by Lammert and Plaintiffs in which the issue of the continued existence of the privilege post-dissolution was the focus of the courts' determinations.

In support of his position that the privilege survives after a business organization ceases to exist, Lammert cites *County of Santa Clara v. Myers Industries, Inc.*, No. 95-298, 1996 WL 53800 (E.D.Pa. February 9, 1996). In that case, BKHN moved to compel DB&R, former counsel of the defunct partnership Newbold's, to produce documents which DB&R claimed were privileged. The court noted that the "analysis of whether the attorney-client privilege survives the death of the client depends on whether the 'rights and interests' of the client could be adversely affected". *Id.* at *1 (citing *Cohen*, 357 A.2d at 692-93). Although all of the former partners of Newbold's were deceased and the partnership had ceased to exist, there was a question whether another entity, Newson, Inc., was the legal successor to Newbold's. *Id.* at *1. Newson, Inc. denied being the successor-in-interest to Newbold's, but until the issue had been determined, the court held that it would be "unfair to require it to assert the privilege or deem it waived." *Id.* at *2. Therefore, the court allowed DB&R to claim the privilege on behalf of the defunct partnership for the time being. *Id.*

Lammert also relies upon, *inter alia*,[6] the case of *PCS Nitrogen, Inc. v. Ross Development Corporation*, No. 2:09-3171-MBS, 2011 WL

---

[6] In addition to the cases we address in this opinion, Lammert cites *Official Committee of Administrative Claimants on Behalf of LTV Steel Company, Inc. v. Bricker*, No. 1:05 CV 2158, 2011 WL 1770113 (N.D. Ohio May 9, 2011). However, this case does not aid in our determination, as it is based upon an Ohio statute for which Pennsylvania has no equivalent.

3665335 (D.S.C. August 19, 2011). Therein, PCS had filed a complaint against Ross, a dissolved corporation, and its directors alleging that the directors had breached their duties to Ross and its creditors by dissipating the corporation's assets. A discovery dispute arose which required the trial court to determine whether Ross retained the attorney-client privilege after its dissolution. After examining **Weintraub** and a number of other decisions, the court held that "[s]ince South Carolina law permits a dissolved corporation to be sued, the court finds that it follows that a dissolved corporation could assert the attorney-client privilege where former directors or others properly exercise authority to do so." **Id.** at *4.

Despite holding that "the attorney-client privilege of a dissolved corporation can be asserted under certain circumstances," the **PCS Nitrogen** court held that the defendants had failed to meet their burden of proving that the privilege applied under the circumstances of that case. **Id.** The corporation asserted neither any reason for raising the privilege other than to protect the directors, nor "any interest in maintaining goodwill, protecting its reputation or protecting any available assets." **Id.** Because the privilege appeared to have been asserted for the impermissible purpose of protecting the personal interests of the directors, the corporation's motion for a protective order was denied. **Id.**

---

**See id.** at *2 (applying Ohio statute which augments the attorney-client privilege by expressly extending it for dissolved corporations).

Similarly, in *Randy International, LTD v. Automatic Compactor Corp.*, 412 N.Y.S.2d 995 (N.Y.Civ.Ct. 1979), the court held that the fact that corporations which were judgment creditors were "defunct and no longer functioning or operating" did not preclude them from invoking the attorney-client privilege. *Id.* at 997. The court held that "even if a defunct corporation were to be equated with a deceased individual, the privilege would continue to exist since it is clear that the privilege continues to exist after the death of an individual client." *Id.* Further, it was appropriate for the former attorneys of the corporations to raise the privilege because, under New York law, "the privilege may be raised by anyone." *Id.* However, the court held that the attorneys failed to meet their burden of justifying the recognition of the privilege because they failed to show that the information sought (whether the attorneys or anyone else held the corporation's money in escrow, whether the attorneys had other matters of the corporation pending in their office) was from confidential communications, had been received in the course of professional employment, or was a matter of public record. *Id.* at 998-99.

On the other side of the issue, Plaintiffs point us to *Gilliland v. Geramita*, No. 2:05-CV-01059, 2006 WL 2642525 (W.D.Pa. September 14, 2006) (McVerry, J.). In *Gilliland*, the plaintiffs sought documents from Hergert, an attorney who had represented three of the defendant companies against which default judgments had been entered. *Id.* at *1. While not

dissolved, those companies were insolvent, no longer had managers, and were "for all practical purposes out of business." *Id.* In addition to serving as counsel for the defendants, Hergert had served as a manager of one company and as a board member of the other two. *Id.* In response to the plaintiffs' discovery requests, Hergert raised the attorney-client privilege to withhold documents, which consisted primarily of emails between Hergert and officers of the companies, because he felt "obligated under the Rules of Professional Conduct to assert the privilege on behalf of" the defunct companies. *Id.*

In ruling on the applicability of the privilege under Pennsylvania law, the court first opined that it mattered not that the defendants had not dissolved and continued to have a legal existence, for "decisions about the attorney-client privilege should be based primarily on the practical realities of the business rather than technical legal status." *Id.* at *2. The practical reality was that, because the CEO of the defendant companies was deceased, all other management had resigned, and Hergert's operational role in the companies had ended, there was no one in charge of the companies. In other words, there was "no current management personnel who [could] assert the attorney-client privilege on behalf of the corporation." *Id.* at *3 (contrasting *Weintraub* and *Maleski*). Noting that the analysis of whether a person has the ability to waive the privilege turns upon whether the individual is an authorized representative of the corporation, the court

similarly held that Hergert had not shown that a person with authority to speak for the company had asserted it: "Defendant cannot meet its burden to prove that the privilege has been validly asserted because there is no person with authority to properly invoke the privilege. Thus, the burden never shifts to plaintiffs to demonstrate that the privilege either does not exist or has been effectively waived." *Id.* at *4.

Addressing policy concerns and counsel's ethical duty to keep a client's confidences, the court offered the following discussion.

> [C]ounsel has no duty to assert the attorney-client privilege on behalf of a non-operating/defunct corporation, and indeed, counsel lacks the ability to do so.
>
> The better rule, in the [c]ourt's view, is that there should be a presumption that the attorney-client privilege is no longer viable after a corporate entity ceases to function, unless a party seeking to establish the privilege demonstrates authority and good cause.

*Id.* (citations omitted).

The reasoning of *Gilliland* has been cited with approval or adopted by other courts. *See*, *e.g.*, *In re Fundamental Long Term Care, Inc.*, No. 8:11-bk-22258-MGW, 2012 WL 4815321 (Bankr.M.D.Fla. October 9, 2012) (citing *Gilliland* in holding that no one remained to assert privilege on behalf of dissolved company and that the rationale behind the privilege no longer applied); *SEC v. Espuelas*, No. 1:11-cv-00025-WSD-RGV, 2011 U.S.Dist.LEXIS 22825 (N.D.Ga. January 27, 2011) (citing *Gilliland* in holding that attorney-client privilege does not survive the dissolution of a

corporation absent a compelling reason); ***Lopes v. Vieira***, 688 F.Supp.2d 1050 (E.D.Cal. 2010) (holding, under the reasoning of ***Gilliland***, that defunct corporation did not retain attorney-client privilege); ***TAS Distributing Co., Inc. v. Cummins, Inc.***, No. 07-1141 (C.D.Ill. October 7, 2009) (citing ***Gilliland*** in holding "[a]bsent some compelling reason to the contrary, the attorney client privilege does not survive the death of a corporation").

Our review of the cases cited by the litigants herein leads us to conclude that the disparate results turn not upon the application of different rules of law, but upon differences in facts. The key fact is whether the corporation is "dead" as opposed to being in some other state, such as a windup phase, bankruptcy or liquidation, or having merged into or been acquired by a successor. In the latter cases, there was a person or entity which succeeded to the defunct company's interests and authority to assert the privilege; in the former, no such person or entity existed.

For example, Lammert relies upon ***Reilly v. Greenwald & Hoffman, LLP***, 196 Cal.App.4th 891 (Cal. App. 2011), in support of his position that a corporation's privilege does survive dissolution. That court, remarking that under California law a dissolved corporation "continues to exist for the purposes of winding up its affairs, prosecuting and defending actions by or against it and enabling it to collect and discharge obligations, dispose of and convey its property and collect and divide its assets[,]" ***id.*** at 901, noted

- 21 -

that "a corporation's dissolution is best understood not as its death, but merely as its retirement from active business." **Id.** at 902 (internal quotation marks and citation omitted). Therefore,

> [b]ecause it continues in existence … it would appear **the persons authorized to act on the dissolved corporation's behalf during the windup process**—its **ongoing management personnel—should be able to assert the privilege**, at least until all matters involving the company have been fully resolved and no further proceedings are contemplated. [] Indeed, if the lawyer-client privilege is simply extinguished upon dissolution, then the corporation's ability to effectively prosecute or defend actions is eviscerated….

**Id.** at 901 (emphasis added) (quoting **Favlia v. Katten Muchin Rosenman LLP**, 188 Cal.App.4th 189, 219-20 (Cal. App. 2010)). The complaint in that case not only failed to allege that the dissolved corporation lacked current management, it "effectively concede[d]" that its majority shareholder was managing the corporation as it went through the post-dissolution process. **Id.** at 902. Thus, **Reilly** stands for the proposition that the privilege survives so long as there is a continued corporate existence and post-dissolution management is there to assert it.[7]

---

[7] The **Reilly** court also held that corporation's attorney was duty-bound to raise the privilege unless and until someone with authority to waive the privilege on the corporation's behalf did so. 196 Cal.App.4th at 902-03. However, the court's determination was inextricably intertwined with the fact that the case was a shareholder derivative suit, the attorney was a defendant in the case, and the attorney would be unable to defend himself against claims of wrongdoing unless the corporation waived the privilege. **Id.** at 898, 903. Such circumstances are not present in the instant case. **See** Trial Court Opinion and Order, 2/26/2014, at 1 n.1 ("Plaintiffs are not

For their opposing argument that a company's privilege terminates upon dissolution, Plaintiffs cite *City of Rialto v. United States Department of Defense*, 492 F.Supp.2d 1193 (C.D. Cal. 2007). In that case, the court indeed concluded that "a dissolved corporation is not entitled to assert the attorney-client privilege." *Id.* at 1197. That ruling applied only to Kwikset, a corporation which had dissolved 50 years ago and transferred substantially all of its assets to AHC. As it no longer had any assets or management, Kwikset no longer had any need for the protections of the privilege. *Id.* at 1200. Therefore, "Kwikset lost its right to assert the attorney-client when its dissolution was complete in 1958." *Id.* at 1201. However, the court also held that AHC acquired the right to assert the privilege as to Kwikset's documents when AHC acquired them along with the rest of Kwikset's assets. *Id.* When AHC became Emhart Industries, Emhart held the privilege as to Kwikset's attorney-client communications. *Id.* Because Emhart failed to assert the privilege in a timely fashion, it waived its right to raise it, and it was required to produce Kwikset's documents. Therefore, the court's holding was not that any privilege attached to Kwikset's attorney-client communications evaporated when Kwikset dissolved; rather, the privilege continued to exist in successors AHC and then Emhart after Kwikset's dissolution was completed.

---

claiming that Mr. Lammert was involved in any scheme to transfer assets in order to avoid payment of creditors.").

A review of other cases cited by the litigants supports our conclusion that the same basic legal concepts underlie them, with the different results based upon the factually dissimilar statuses of the companies. **See**, **e.g.**, **County of Santa Clara**, 1996 WL 53800 at *2 (refusing to deem privilege waived until determined whether Newson, Inc. was successor to defunct partnership), **Gilliland**, 2006 WL 2642525 at *3 (holding privilege not invoked properly on behalf of defunct companies because there was "no person that [was] in a role analogous to current corporate management"); **Lewis v. United States**, 2004 WL 3203121 at * (W.D. Tenn. December 7, 2004) (holding attorney client privilege no longer applied where company was bankrupt and had no assets or managers); **Official Committee of Administrative Claimants on Behalf of LTV Steel Company, Inc. v. Moran**, 802 F.Supp.2d 947, 949-50 (N.D. Ill. 2011) (holding privilege continued to exist for company which had temporarily dissolved and had ceased normal business operations but had "not yet 'died'" because company was pursuing claims as part of the windup process and retained management which could assert the privilege). **See also Melendrez v. The Superior Court of the State of California**, 215 Cal.App.4th 1343 (Cal. App. 2013) (holding *de facto* assignee of defunct corporation had authority to waive privilege, but noting "[i]f there is no … successor entity, and the corporation no longer exists, we presume the privilege would no longer exist").

The notion that the continued existence of the corporation's privilege turns on whether there is anyone with continued authority to raise it is in accord with secondary sources which provide that, "[w]hen a corporation or other organization has ceased to have a legal existence such that no person can act in its behalf, ordinarily the attorney-client privilege terminates…." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 73 cmmt. K. **See also** 1 Testimonial Privileges § 1:74 (3d ed. 2014) ("For organizations, the general rule is that when the organization ceases to have legal existence such that no one can act in its behalf, the privilege terminates.").

Our ruling also is consistent with Pennsylvania's policy to apply the privilege "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." **Stewart**, 690 A.2d at 197 (internal quotation marks and citation omitted). As the **Gilliland** court observed,

> This rule is consistent with the principle that the attorney-client privilege should be given the narrowest interpretation consistent with its purpose. No real purpose would be served by continuing the privilege after operations cease, as the corporation would no longer have any goodwill or reputation to maintain. The possibility that a corporation's management will hesitate to confide in legal counsel out of concern that such communication may become unprivileged after the corporation's demise is too remote and hypothetical to outweigh the countervailing policy considerations supporting discoverability. Accordingly, counsel has no duty to assert the privilege on behalf of a non-functioning corporation. Instead, the duty of counsel to assert the privilege would be triggered only when a person with

> authority to act on behalf of the corporation instructs counsel to assert the privilege.

***Gilliland***, 2006 WL 2642525 at *4 (citations omitted). ***See also Cohen***, 357 A.2d at 692-94 (holding interests of administration of justice warranted disclosure of communications between attorney and deceased client).

Moreover, as the United States Supreme Court has noted, the public good served by the privilege, namely fostering open communication between attorney and client, is somewhat lessened when the client is a company rather than a person:

> According to respondents, corporate managers will be wary of speaking freely with corporate counsel if their communications might subsequently be disclosed in bankruptcy. But the chilling effect is no greater here than in the case of a solvent corporation, where individual officers and directors always run the risk that subsequent management might waive the corporation's attorney-client privilege with respect to prior management's communications with counsel.

***Weintraub***, 471 U.S. at 357 (citations omitted). The privilege belongs to the company, not to the individuals through whom the company acts, and those individuals are on notice from the start that their communications may one day be disclosed not only to future management, but also to a bankruptcy trustee, a statutory liquidator, or a successor company.

Therefore, we hold that the communications between a corporation or other business entity and its attorney remain subject to the attorney-client privilege after the company dissolves and/or ceases normal business operations so long as the company retains some form of continued existence

evidenced by having someone with the authority to speak for the "client." That person may be a bankruptcy trustee as in **Weintraub**; a statutory liquidator as in **Maleski**; a successor-in-interest as in **County of Santa Clara** and **City of Rialto**; a person managing the corporation during the windup process as in **Reilly**; or some other person or group who succeeds to the defunct company's management as in **Melendrez**, 215 Cal.App.4th at 1356 (holding dissolved company which had gone through bankruptcy, no longer had officers or directors, and existed only as a shell to pay out insurance proceeds to asbestos claimants could assert attorney-client privilege through the company's insurers as its *de facto* assignee).

However, if a business is dissolved and/or has ceased to operate, and has neither a legal successor nor some remaining management with authority to handle the company's post-dissolution windup, then there is no longer any "client" to raise or waive the privilege. Without such a client, it is impossible to satisfy the burden of one invoking the privilege to show that "[t]he privilege has been claimed and is not waived by the client." **Fleming**, 924 A.2d at 1264.

Having determined the applicable law, we apply it to the facts before us. NREIS, Inc. was a Pennsylvania corporation with a registered office in Pittsburgh; NREIS, L.P. was a Pennsylvania limited partnership with a registered office at the same address. Complaint, 5/14/2013, at 2. NREIS Texas was a Texas limited liability company with a registered office in Dallas.

*Id.* "NREIS, Inc. sold its general partner interests in 2011 and is now defunct; NREIS, L.P. was merged into NREIS, LLC, a Delaware limited liability company, which dissolved in 2013. NREIS Texas was also dissolved in 2013." Lammert's Brief at 7 n.1 (some punctuation added).

"As part of the wind down of NREIS, L.P., its offices in Pittsburgh were vacated, and its computer systems and servers were disconnected and placed in storage." *Id.* at 7. However, so he could "continue to provide legal advice to NREIS, L.P., as well as assistance in its wind down," *id.* (some punctuation added), Lammert was given electronic copies of his documents and emails, and an email account was set up through which he could continue to receive NREIS email after the dissolution. *Id.* at 7-8. In addition to the electronic documents, Lammert "is also in possession of several bankers' boxes of bank reconciliations and related documents concerning consumer residential real estate transactions." *Id.* at 8.

Although at some point he had held management positions with two of Defendants and had retained company documents and the ability to receive company email, Lammert does not claim to have retained the power to act on behalf of any Defendants post-dissolution. Rather, he emphasized that he is a non-party and is acting *pro se* to discharge his ethical duties to his former clients. *See, e.g.*, Reply Brief to Plaintiffs' Brief in Opposition to Quash Subpoena, 12/12/2013, at 1 ("I, Thomas K. Lammert, Jr., am not a party to this lawsuit, am not an employee of the Defendants and have not

been hired by them to be involved in this case. … I am before this [c]ourt because I believe I have a professional responsibility to protect privileged communications between my former clients and me….").

Plaintiffs subpoenaed the following documents from Lammert.

1. All documents relating to the current operations of NREIS, L.P., NREIS, Inc. and/or NREIS of Texas, LLC.

2. All documents relating to the transfer of assets of NREIS, L.P. and/or NREIS, Inc. from January 1, 2009 to present.

3. All documents relating to the payment of creditors by NREIS, L.P. and/or NREIS, Inc. from January 1, 2013 to present.

4. All documents that identify the names and addresses of the persons who served as officers and/or directors of NREIS, L.P. and/or NREIS, Inc. from January 1, 2012 to present.

5. All communications with employees, owners, agents and/or representatives of NREIS, L.P. and/or NREIS, Inc. relating to the disposition of assets of NREIS, L.P. and/or NREIS, Inc.

6. All communications with employees, owner, agents and/or representatives of NREIS, L.P. and/or NREIS, Inc. relating to the transfer of assets of NREIS, L.P. and/or NREIS, Inc.

7. All documents, including communications with employees, owner, agents and/or representatives of NREIS, L.P. and/or NREIS, Inc., relating to the cessation of the operations of NREIS, L.P. and/or NREIS, Inc.

8. All documents that identify the insurance carrier(s) providing errors and omissions/liability insurance coverage to the officers and/or directors of NREIS, L.P. and/or NREIS, Inc. from January 1, 2012 to present, and a copy of the declaration page and insurance policy applicable during such time.

Subpoena to Attend and Testify, 9/17/2013, at Exhibit 1.

Because the burden is upon the person asserting the privilege to establish that it has been invoked properly, it is clear that Lammert's claim of privilege cannot be sustained on the record before us. Lammert points to no person who presently has the authority to claim or waive the privilege on behalf of Defendants. Thus, as with the attorney in **Gilliland**, he failed to show that the "privilege has been claimed and is not waived by the client." **Fleming**, 924 A.2d at 1264.

Further, although Lammert generically asserts that "many of the documents demanded by the subpoena are protected by the attorney-client privilege[,]" Motion to Quash Subpoena and for Protective Order, 12/2/2013, at 3, he failed to offer proof that any document in his possession constitutes a communication made by one of Defendants to Lammert which "relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort." **Fleming**, 924 A.2d at 1264.

Lammert appears to justify his bald claim of privilege by pointing to the burden it would cause him, a non-party who is no longer being compensated for his time by Defendants, to review the documents and compile a privilege log. In so doing, Lammert is trying to have his cake and

eat it too. The fact that such a burden of time and money would be placed upon Lammert if the privilege were still applicable under the circumstances of this case further supports our determination that the interests of justice outweigh the motivation for the client to speak openly with its counsel when the client is a business which no longer has any existence.

Because the record contains insufficient proof that the attorney-client privilege is applicable to the information or documents in Lammert's possession, the privilege has not been invoked properly. Therefore, the attorney-client privilege, as codified at 42 Pa.C.S. § 5928, does not prevent Lammert from disclosing Defendants' communications. Accordingly, we affirm the trial court's order to the extent that it denied Lammert's motion to quash the subpoena based upon the existence of attorney-client privilege.

Order affirmed. Motion to Quash Issues to Be Raised on Appeal granted. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2015